1          UNITED STATES BANKRUPTCY COURT

2           EASTERN DISTRICT OF MICHIGAN

3               SOUTHERN DIVISION

4

5  In re:                        Chapter 13

6  BRANDON HEITMANN,             Case No. 24-41956-mar

7      Debtor.                   Hon. Mark A. Randon

8  _____/

9  MOHAMED SAAD,

10     Plaintiff,                Adv. Pro. No. 24-04375-mar

11 vs.                           Hon. Mark A. Randon

12 BRANDON HEITMANN,

13     Defendant.

14 _____/

15

16

17         The Video Deposition of BRANDON HEITMANN,

18         Taken via Hanson Remote,

19         Commencing at 10:24 a.m.,

20         Tuesday, July 22, 2025,

21         Before Susannah Gorman, CSR-9271, RPR.

22

23

24

25

## Page 2

1  APPEARANCES:

2

3  JEFFREY H. BIGELMAN, ESQ. (P61755)

4  Osipov Bigelman, P.C.

5  20700 Civic Center Drive, Suite 420

6  Southfield, Michigan 48076-4140

7  (248)663-1800

8  jhb@osbig.com

9      Appearing on behalf of the Plaintiff.

10

11  TYLER PATRICK PHILLIPS, ESQ. (P78280)

12  Kotz Sangster Wysocki P.C.

13  400 Renaissance Center, Suite 3400

14  Detroit, Michigan 48243-1618

15  (313)259-8782

16  tphillips@kotzsangster.com

17      Appearing on behalf of the Defendant.

18

19  ALSO PRESENT:

20  Neal Rogers, Legal Videographer

21  Brandon Heitmann, Defendant

22

23

24

25

## Page 3

TABLE OF CONTENTS

BRANDON HEITMANN                                    PAGE

Examination                                           6
By Mr. Bigelman
Examination                                          81
By Mr. Phillips


                        EXHIBITS

EXHIBIT                                             PAGE
(Exhibits attached to transcript.)

DEPOSITION EXHIBIT A                                  10
10:36 a.m.
Contract
DEPOSITION EXHIBIT C                                  16
10:49 a.m.
Swimming Pool Permit Application
DEPOSITION EXHIBIT D                                  20
10:57 a.m.
Revised Document Application
DEPOSITION EXHIBIT E                                  22
11:01 a.m.
Revised Documents Application
DEPOSITION EXHIBIT F                                  24
11:04 a.m.
Defendant's Response to Plaintiff
Interrogatories
DEPOSITION EXHIBIT G                                  24
11:04 a.m.

## Page 4

Table of payments
DEPOSITION EXHIBIT H                                  32
11:22 a.m.
Invoice from CRC Contractors Rental
DEPOSITION EXHIBIT I                                  35
11:27 a.m.
Summary page
DEPOSITION EXHIBIT CC                                 55
12:09 p.m.
Photo of the pool site
DEPOSITION EXHIBIT K                                  60
12:36 p.m.
Residential builder's license look-up
website
DEPOSITION EXHIBIT L                                  64
12:43 p.m.
Formal complaint
DEPOSITION EXHIBIT M                                  73
1:03 p.m.
Consent order
DEPOSITION EXHIBIT T                                  74
1:04 p.m.
Boyd complaint
DEPOSITION EXHIBIT U                                  75
1:06 p.m.
Hebeka complaint
DEPOSITION EXHIBIT V                                  77
1:07 p.m.
Carter complaint
DEPOSITION EXHIBIT W                                  78
1:09 p.m.
Responses to Plaintiff's Requests for
Admission, Third Set of Interrogatories
DEPOSITION EXHIBIT Y                                  80
1:14 p.m.
License to do business in the city of
Dearborn for Construction Contractors

## Page 5

1  Remote deposition
2  Tuesday, July 22, 2025
3  About 10:24 a.m.
4      THE VIDEOGRAPHER:  We are on the record.
5  This is the video-recorded deposition of Brandon
6  Heitmann being taken remotely via Zoom.  Today is
7  July 22, 2025, and the time is 10:24 a.m.  Would the
8  attorneys please identify themselves and the court
9  reporter please swear in the witness.
10      MR. BIGELMAN:  Jeffrey Bigelman on behalf
11  of Plaintiff.
12      MR. PHILLIPS:  Tyler Phillips, P78280, on
13  behalf of Defendant.
14      BRANDON HEITMANN
15  was thereupon called as a witness herein and, after
16  having first been duly sworn to testify to the truth,
17  the whole truth, and nothing but the truth, was
18  examined and testified as follows:
19      MR. BIGELMAN:  As an initial matter,
20  Amanda's gonna need to leave the room because she's
21  not a party to this case.
22      MR. PHILLIPS:  That's fair, Amanda.
23      Yep, that's fine, Jeff.
24      You want to go in my office?
25      Jeff, can we just pause for one second?

1  I'm going to show her to my office.
2         MR. BIGELMAN:  Yeah, no problem.
3         THE VIDEOGRAPHER:  We are going off the
4  record at 10:25 a.m.
5         (Off the record at 10:25 a.m.)
6         (Back on the record at 10:27 a.m.)
7         THE VIDEOGRAPHER:  We are back on the
8  record at 10:27 a.m.
9         MR. BIGELMAN:  The witness has already been
10  sworn.
11         Mr. Heitmann, I presume you have given
12  depositions before?
13         THE WITNESS:  Yes.
14         MR. BIGELMAN:  So you understand the
15  process; correct?
16         THE WITNESS:  Yes.
17         MR. BIGELMAN:  You were here when I
18  explained the process to your wife; correct?
19         THE WITNESS:  Yes.
20         MR. BIGELMAN:  Okay.
21         EXAMINATION
22  BY MR. BIGELMAN:
23  Q.  What's your educational background?
24  A.  Can you elaborate on that?
25  Q.  Did you graduate high school?

1  A.  Yes.
2  Q.  From what school?
3  A.  Lutheran High School North.
4  Q.  Did you go to college?
5  A.  Yes.
6  Q.  Where did you go?
7  A.  I went to -- excuse me.  Went to Oakland; took some
8     classes there and took come classes at Macomb.
9  Q.  Did you obtain a degree from either Oakland University
10     or Macomb Community College?
11  A.  No.
12  Q.  Did you go to trade school?
13  A.  No.
14  Q.  Have you had any professional licenses?
15  A.  Builder's license.
16  Q.  Your license is currently suspended; correct?
17  A.  I believe so.
18  Q.  Do you know how long it's suspended for?
19  A.  I don't recall.
20  Q.  You are the sole owner of Exigent Landscaping, LLC;
21     correct?
22  A.  Yes.
23  Q.  When did you form that company?
24  A.  I can't recall exactly when.
25  Q.  Did you start that company with your own money, or did

1  someone give you money, or how did you start that
2  company?
3  A.  Can you elaborate a little bit on that?
4  Q.  Before I go any further, is there anything that would
5     impair your memory as we sit here today, any health
6     conditions, any drug use, whether it's prescription or
7     street drugs or alcohol?  Is there anything that would
8     impair your memory as we sit here today?  Can you
9     answer, please.
10  A.  Can you elaborate on what the funding would be for?
11  Q.  You need to answer the question I just asked.
12         MR. PHILLIPS:  Jeff, he did.  I don't know
13  why you're not picking it up.  He said, "No."
14         But go ahead and speak loudly into the
15  microphone, Brandon.
16         Can you repeat the prior question, just so
17  we have a clear record for you, Jeff.
18         MR. BIGELMAN:  Susannah, are you able to
19  hear his answers?
20         (The court reporter indicates she cannot
21  hear the witness's answers either.)
22         MR. BIGELMAN:  Let's try to speak loudly so
23  we can make a clear record.
24         THE WITNESS:  Okay.
25

1  BY MR. BIGELMAN:
2  Q.  So there's no impairments of memory; is that correct?
3  A.  Correct.
4  Q.  Okay.  When you started Exigent Landscaping, where did
5     the money come from to start the company?
6  A.  Self-funded.
7  Q.  How much money did you use to start the company?
8  A.  I don't recall the exact amount.
9  Q.  Prior to starting the company, did you gain experience
10     somewhere building pools?
11  A.  No.
12  Q.  Where did you work before forming Exigent Landscaping?
13  A.  I worked at Jet's Pizza, Sorrento's Pizza, and for my
14     cousin's landscaping company.
15  Q.  What was the name of your cousin's landscaping
16     company?
17  A.  Not sure what it was called at the time, but now it is
18     called Height Control Lawn & Landscape, I believe.
19  Q.  Who is Hank Bell to you?  Is he related to you?
20  A.  Not exactly.
21  Q.  So he's not related to you; correct?
22  A.  Correct.
23  Q.  How would you describe your relationship with him?
24  A.  We were working together to build pools, and he was --
25  Q.  You worked for him; is that correct?

1    MR. PHILLIPS:  I don't think he finished
2  his answer.
3         Go ahead.  Finish your answer, Brandon.
4         **THE WITNESS:  And he was like a mentor, I**
5  **would say.**
6  BY MR. BIGELMAN:
7  Q.  How old are you?
8  **A.  Thirty-one.**
9  Q.  When did you work for him?
10  **A.  Sorry, when did I work for who?**
11  Q.  For Hank Bell.
12  **A.  I never worked for Hank Bell besides, like, small**
13     **landscaping stuff for his personal home.**
14  Q.  Brandon, what I have put on the screen has been marked
15     as Exhibit A.  Can you see that document?
16         MARKED BY THE REPORTER:
17         DEPOSITION EXHIBIT A
18         10:36 a.m.
19  **A.  Yes.**
20  Q.  The top left corner has the Exigent Landscaping logo.
21     Do you see that?
22  **A.  Yes.**
23  Q.  The top middle says "Estimate."  Do you see that?
24  **A.  Yes.**
25  Q.  It's dated June 27, '22.  Do you see that?

1  **A.  Yes.**
2  Q.  And it says, "Dear OJ and Mohamed, 921 Crescent Drive,
3     Dearborn"; correct?
4  **A.  Yes.**
5  Q.  This was a proposal to build a swimming pool; correct?
6  **A.  Correct.**
7  Q.  You didn't have the builder's license at this time;
8     correct?
9  **A.  Correct.**
10  Q.  Do you see at the bottom of the page, it has
11     "License No. 802082183"?  Do you see that?
12  **A.  Yes.**
13  Q.  That's not a residential builder's license, is it?
14  **A.  Correct.**
15  Q.  And, in fact, that same license number is on every
16     page; correct?
17  **A.  Correct.**
18  Q.  I'm going to -- see these numbers at the bottom?
19     These are called Bates numbers.  These are how lawyers
20     mark documents.  Okay?
21  **A.  Yes.**
22  Q.  So this was marked by an attorney as "BH27."  Do you
23     see that?
24  **A.  Yes.**
25  Q.  Okay.  And this document was signed by Mohamed Saad,

1  Avery Petri, and you on June 27, 2022, by Docusign;
2  correct?
3  **A.  Yes.**
4  Q.  Were you with Mohamed Saad before this contract was
5     executed?
6  **A.  No.**
7  Q.  Did you go out and visit 921 Crescent Drive, Dearborn,
8     before this contract was executed?
9  **A.  I don't think so.**
10  Q.  Who is Avery Petri?
11  **A.  Can you repeat that, please.**
12  Q.  Right here on the screen, Avery Petri, who is that?
13  **A.  That was our sales -- one of our sales reps.**
14  Q.  She worked for you?  Or is it a "he"?
15  **A.  "He."  He worked for Exigent.**
16  Q.  Okay.
17         MR. PHILLIPS:  Jeff, I don't mean to
18  interrupt, but just as a formality, I don't think we
19  ever got the roll call of who is in the room.  Is it
20  the same as Ms. Heitmann?
21         MR. BIGELMAN:  Can you say again, Tyler.
22         MR. PHILLIPS:  Yeah.  I apologize for
23  interrupting, but as a formality, I don't think we got
24  the roll call of who was in every room.  Is it the
25  same as Ms. Heitmann?  So I can presume Mr. Saad's not

1  with us today?
2         MR. BIGELMAN:  That's correct.
3         MR. PHILLIPS:  Okay.  That satisfies me in
4  terms of who is in the room.  Thank you.  Continue.
5  Sorry about that, Jeff.
6         MR. BIGELMAN:  No problem.  You're looking
7  at my home office.
8  BY MR. BIGELMAN:
9  Q.  Did Avery Petri work on commission for you or salary
10     or some type of hybrid?
11  **A.  I believe it was a hybrid.**
12  Q.  Do you recall what it was?
13  **A.  Not the exact amount.**
14  Q.  As part of Exhibit A, there's a document attached to
15     it.  Do you see where I have highlighted "CO1"?  Does
16     that mean "Change Order 1"?
17  **A.  Yes.**
18  Q.  This is dated August 5, 2022; correct?
19  **A.  Yes.**
20  Q.  And as of August 5, 2022, you did not have a
21     residential builder's license; correct?
22         **THE WITNESS:  Thanks, Phil.**
23  BY MR. BIGELMAN:
24  Q.  Do you think I'm correct, or you think you did?
25  **A.  I don't think I had a builder's license at that time.**

**Page 14**

1  Q.  Prior to August 5, 2022, and June 27, 2022, did you
2      ever advise Mr. Saad that you did not have a
3      residential builder's license?
4  A.  Yes.
5  Q.  When would that have been?
6  A.  I texted him and told him I was gonna be working with
7      Hank and he was gonna be assisting me with the permit
8      process and Hank's been in construction for 40 years
9      and we were gonna be working together on it.
10 Q.  Has that text been produced?
11 A.  I believe so.  I believe so.  I don't know if I can
12     ask Tyler or not but. . .
13         MR. PHILLIPS:  We produced everything,
14     Jeff.
15 BY MR. BIGELMAN:
16 Q.  You testified that you had not spoken to Mr. Saad
17     prior to the execution of the contract on June 27,
18     '22; correct?
19 A.  Can you repeat that, please.
20 Q.  Yeah.  When was the supposed text saying that you were
21     gonna use Hank Bell's license?
22 A.  I don't recall the exact date, but it was before the
23     permits were pulled.  If I can recall correctly,
24     Mohamed had some contacts in the City, and he was
25     trying to expedite the process of the approval of the

**Page 15**

1      permits, and I told him the name the permits were
2      under and sent him a brief description of who I was
3      working with on that.
4  Q.  Okay.  But you would not have pulled permits before
5      you signed the contract on June 27, '22; correct?
6  A.  Correct.
7  Q.  And you didn't pull permits prior to August 5, 2022;
8      did you?
9  A.  I don't -- August 5, 2022.  I don't recall exactly
10     when we pulled the permits.  I would have to look at a
11     document.
12 Q.  There was never -- as of June 27, '22, and August 5,
13     2022, there was no residential builder's license
14     attached to Exigent Landscaping, LLC; correct?
15 A.  I'm sorry.  Can I give you a new answer to my -- can I
16     rephrase my last answer?
17 Q.  Just answer the present question, please.
18 A.  Okay.  Can you ask it again, please.
19         MR. BIGELMAN:  Susannah, can you reread it.
20         (The court reporter read back the previous
21     question at 10:45 a.m.)
22         THE WITNESS:  That's correct.  We viewed
23     Hank as our qualified officer.
24 BY MR. BIGELMAN:
25 Q.  His company is Construction Contractors; right?

**Page 16**

1  A.  Correct.
2  Q.  They're not mentioned anywhere in the June 27, '22,
3      document or the change order on August 5, 2022;
4      correct?
5  A.  Correct.
6  Q.  If we look here on page 4 of Exhibit A, it says,
7      "Estimated start date, August," slash,
8      "September 2022, contingent on weather, certain
9      material availability, and building permit issuance";
10     correct?
11 A.  Correct.
12 Q.  Showing you on the screen what's been marked as
13     Exhibit C.  Can you still see that?
14         MARKED BY THE REPORTER:
15         DEPOSITION EXHIBIT C
16         10:49 a.m.
17         MR. PHILLIPS:  You just closed it, Jeff.
18         MR. BIGELMAN:  Okay.  Let's try it again.
19 BY MR. BIGELMAN:
20 Q.  Do you see it now?
21 A.  Yes.
22 Q.  Okay.  This says "Swimming Pool Permit Application."
23     Do you see that?
24 A.  Yes.
25 Q.  This is dated August 31, 2022; right?

**Page 17**

1  A.  Yes.
2  Q.  So that's after June 27, '22, which was the date you
3      signed the contract, and also after Change Order 1 of
4      August 5, 2022; correct?
5  A.  If we're referring to the document in front of us,
6      yes.  Off memory, I thought Change Order 2 was signed
7      after we had the permits and started work.
8  Q.  I'm talking about Change Order 1, which is dated
9      August 5, 2022.
10 A.  August 5th. . .  Okay.  Yeah, according to this
11     document.
12 Q.  Let's go back to Exhibit A.  June 27, 2022; right?
13 A.  Yep.
14 Q.  Change Order 1, August 5, 2022; correct?
15 A.  Correct.
16 Q.  Exhibit C, "Swimming Pool Permit Application,"
17     August 31, 2022; correct?
18 A.  Correct.
19 Q.  I did not hear your answer.
20 A.  Correct.
21 Q.  This is your handwriting?
22 A.  No.
23 Q.  First you said, "Correct."  Then you say, "No."
24         MR. PHILLIPS:  He's answering "Correct" to
25     the prior question, Jeff, which wasn't regarding

Page 18

1 handwriting.
2 BY MR. BIGELMAN:
3 Q. Is this your handwriting on this, document, which is
4   marked as Exhibit C?
5 A. No.
6 Q. Talk into the microphone. I cannot hear you.
7 A. No.
8 Q. Did you sign Hank Bell's name on this document?
9 A. No.
10 Q. Do you know who did?
11 A. No.
12 Q. Do you believe that Hank Bell signed this signature
13   here that purports to be his?
14 A. I'm not sure. I don't recall.
15 Q. Would you agree that on the first page of Exhibit C,
16   there's no mention of Brandon Heitmann or Exigent
17   Landscaping, LLC?
18 A. In the first page? Correct.
19 Q. Correct. On the second page, the only mention of you
20   is an e-mail address, "bheitmann12@yahoo.com";
21   correct?
22 A. Correct.
23 Q. And your wife's name, Amanda Pisarski; correct?
24 A. Correct.
25 Q. Is that the e-mail you used at the time,

Page 19

1   bheitmann12@yahoo.com?
2 A. It was one of them, yes.
3 Q. What about this address, 55949 Lancewood Drive, Shelby
4   Township? What is that?
5 A. That's Amanda's home address -- parents' address.
6 Q. Is that where she lived as of August 25th, '22?
7 A. No.
8 Q. You two lived somewhere else at the time?
9 A. I believe so, yes. Or yes, we did.
10 Q. Does this look like your wife's handwriting?
11 A. I'm not sure.
12 Q. Do you recognize the notary signature?
13 A. Yes. I see it.
14 Q. Right. Who is the notary? Do you know?
15 A. Who is the notary? Can you rephrase that.
16 Q. You know what a notary is; correct?
17 A. Correct.
18 Q. Did you have a notary working at your office or
19   someone who had a notary --
20 A. No.
21 Q. No?
22 A. No.
23 Q. Where would you get documents notarized when you
24   needed them notarized?
25 A. FedEx or a bank.

Page 20

1 Q. Do you see at the bottom of this document, "Plan fee,
2   $15. Processing fee, $42"?
3 A. Yes.
4 Q. Did Exigent pay that money, or did Construction
5   Contractors or Hank Bell? Do you know who paid that?
6 A. I don't recall.
7 Q. And as of August 25, 2022, you did not have a
8   residential builder's license; correct?
9 A. Correct.
10 Q. Showing you what's been marked as Exhibit D. Do you
11   see it on your screen?
12       MARKED BY THE REPORTER:
13       DEPOSITION EXHIBIT D
14       10:57 a.m.
15 A. Yes.
16 Q. This is titled "Revised Document Application";
17   correct?
18 A. Yes.
19 Q. And this is dated September 29, '22; correct?
20 A. Yes.
21 Q. This is for 921 Crescent Drive; correct?
22 A. Yes.
23 Q. Is this your handwriting on the first page of
24   Exhibit D?
25 A. No.

Page 21

1 Q. Were you ever an authorized agent of Construction
2   Contractors?
3       MR. PHILLIPS: Foundation. Form.
4       If you know, go ahead.
5       THE WITNESS: Can you reask that, please.
6 BY MR. BIGELMAN:
7 Q. Were you ever an authorized agent of Construction
8   Contractors?
9       MR. PHILLIPS: Same objection.
10      THE WITNESS: No.
11 BY MR. BIGELMAN:
12 Q. Page 2, line 17, "Company, Construction Contractors,"
13   do you see that?
14 A. Yes.
15 Q. Line 23, "Authorized representative, Brandon
16   Heitmann," do you see that?
17 A. Yes.
18 Q. Paragraph 22, "Company e-mail,
19   exigentlandscaping@yahoo.com." Was that an e-mail
20   that you used at the time?
21 A. Yes.
22 Q. I didn't hear your answer.
23 A. Yes.
24      MR. PHILLIPS: Did you get that, Jeff?
25      MR. BIGELMAN: I did.

1    MR. PHILLIPS: Okay.

2

3    BY MR. BIGELMAN:

4    Q. Showing you what's been marked Exhibit E. This

5       document's entitled "Revised Documents Application."

6       Revision date, 10-24-22. Do you see that?

7           MARKED BY THE REPORTER:

8           DEPOSITION EXHIBIT E

9           11:01 a.m.

10   **A. Yes.**

11   Q. Do you recognize -- strike that.

12          Paragraph 1, "Permit site address: 921

13      Crescent Drive, city of Dearborn"; correct?

14   **A. Yes.**

15   Q. Paragraph 7, "This revision is for a grotto that is

16      attached to the pool. We have already submitted the

17      plans for the pool itself." That's what it says;

18      correct?

19   **A. Yes.**

20   Q. Is this your handwriting on the front, on this first

21      page here?

22   **A. No.**

23   Q. Do you know whose handwriting it is?

24   **A. No.**

25   Q. On the second page, paragraph 17, "Company name:

1       Construction Contractors." Paragraph 22, again, your

2       e-mail is exigentlandscaping@yahoo.com. That's your

3       e-mail; correct?

4    **A. Yes.**

5    Q. Paragraph 20, "Company phone number: 586-489-6680."

6       That's your phone number?

7    **A. No.**

8    Q. Whose phone number's that?

9    **A. Amanda's.**

10   Q. Paragraph 23, "Authorized representative: Madison

11      Braunz"; correct?

12   **A. Correct.**

13   Q. She's a former employee of Exigent Landscaping;

14      correct?

15   **A. Correct.**

16   Q. Is this her writing on this page we're looking at,

17      page 2 of Exhibit E?

18   **A. I'm not sure.**

19   Q. And as of October 24, 2022, you personally did not

20      have a residential builder's license; correct?

21   **A. Correct.**

22   Q. Okay. I'm going to ask some questions, and I'm going

23      to toggle back between Exhibits F and G. Okay?

24   **A. Okay.**

25

1           MARKED BY THE REPORTER:

2           DEPOSITION EXHIBIT F

3           11:04 a.m.

4           MARKED BY THE REPORTER:

5           DEPOSITION EXHIBIT G

6           11:04 a.m.

7    Q. This is Exhibit F, "Defendant's Response to Plaintiff

8       Interrogatories." Interrogatory 1, we asked you to

9       "Identify the amount that you or your company received

10      from the Plaintiff"; right?

11   **A. Correct.**

12   Q. Okay. And you first say that you received $50,000 on

13      July 1; correct?

14   **A. Correct.**

15   Q. So I made this chart here. Can you see the chart?

16   **A. Correct. Yeah, I can.**

17   Q. So the chart reflects the July 1 payment that we just

18      spoke about; correct?

19   **A. Correct.**

20   Q. Then you state in your interrogatory answer that you

21      received $100,000 on August 18, 2022; correct?

22   **A. Correct.**

23   Q. That's reflected here; correct?

24   **A. Correct.**

25   Q. And I also broke it out separately, the second table,

1       the first two payments; correct? Do you see that?

2    **A. Correct.**

3    Q. Then you state, "$26,348 direct payment made to

4       subcontractor for progress payment on December 14,

5       2022"; correct?

6    **A. Correct.**

7    Q. And if we go back to Exhibit G, that's our table here;

8       correct?

9    **A. Correct.**

10   Q. It's also reflected in this table at the bottom,

11      payments to third parties; right?

12   **A. Correct.**

13   Q. Who was that contractor?

14   **A. That was Messina's Concrete.**

15   Q. I'm going back to your interrogatory response. You

16      received a hundred thousand dollars on December 30,

17      2022; correct?

18   **A. Yes.**

19   Q. That's reflected in Exhibit G in the table; correct?

20   **A. Yes.**

21   Q. That's also reflected in the table of the payments to

22      Exigent; correct?

23   **A. Yes.**

24   Q. December 30, 2022, you did not have your builder's

25      license; correct?

Page 26

1  A.  Correct.
2  Q.  So you had received $250,000 from Mr. Saad, or the
3      company had, before you received your residential
4      builder's license; correct?
5  A.  Correct.
6  Q.  If you go to the second page, continuation of your
7      answer to Interrogatory 1, it states that "Direct
8      payments were made to stone company in the amount of
9      $5,506.72 on April 23rd"; correct?
10  A.  Yes.
11  Q.  Going back to Exhibit G, I accounted for that payment;
12      correct?
13  A.  Yes.
14  Q.  And I also accounted for it in the third table for
15      payments to third parties; correct?
16  A.  Yes.
17  Q.  Going back to your interrogatory response, Exigent
18      received a hundred thousand dollars on May 4, 2023;
19      correct?
20  A.  Yes.
21  Q.  And going back to Exhibit G, I accounted for that in
22      both the first table and in the second table; correct?
23  A.  Yes.
24  Q.  This table shows a total of $350,000 paid directly to
25      Exigent; right?

Page 27

1  A.  Yes.
2  Q.  And that's accurate; right?
3  A.  Yes.
4  Q.  And then if we go back to the interrogatory response,
5      it says, "Credited Plaintiff for direct payments to
6      the water slide supplier in the amounts of $5,718.87
7      and $7,620.87 on August 1, 2023, and August 15, 2023";
8      correct?
9  A.  Yes.
10  Q.  I accounted for both of those payments in the first
11      table of Exhibit G and in the third table; correct?
12  A.  Yes.
13  Q.  Would you agree that Exhibit G is an accurate summary
14      of your interrogatory that we just looked at?
15  A.  Yes.
16  Q.  Do you know why Mohamed Saad would have paid the stone
17      company directly?
18  A.  Yeah.  He was behind on payments, and he offered to
19      pay suppliers directly.  He claimed he was waiting on
20      money from the bank.
21  Q.  So you're claiming he was behind on payments?
22  A.  Correct.  He was.
23  Q.  Is there any e-mails or text messages to that effect?
24  A.  Yes, text messages, mainly, if I recall correctly.
25      Phone conversations.

Page 28

1  Q.  And were you communicating directly with him or was
2      one of your employees?
3  A.  When it came to money, yes, I was -- I was -- I was
4      communicating directly with him.
5  Q.  How often were you at the jobsite at 921 Crescent?
6  A.  What time period are you referring to?
7  Q.  Well, from the start of the job until Exigent was
8      terminated.
9  A.  In the beginning, I was not on the jobsite too much.
10      I had a project manager managing the project that
11      was -- towards the end of the project, I became a
12      little bit more involved, but my project manager
13      managed the project, and my operations manager.
14  Q.  In total, how many times would you say you visited 921
15      Crescent Drive?
16  A.  Probably 15 times, maybe 20.
17  Q.  Who is the project manager on the job?
18  A.  What time period?
19  Q.  Was there more than one?
20  A.  Yes.
21  Q.  Who were the project managers on the job?
22  A.  I believe, originally, if my memory is correct, Archie
23      was the first project manager on the job.
24  Q.  What's Archie's last name?
25  A.  Mercado.

Page 29

1  Q.  Why was he replaced?
2  A.  I believe -- we believed he was stealing from the
3      company.
4  Q.  You fired him?
5  A.  Yes.
6  Q.  Did you have issues with his workmanship also?
7  A.  No.
8  Q.  And who was the second project manager?
9  A.  Kody -- well, excuse me.  Kody was his -- was the
10      operations manager, and Archie reported to him, but
11      the other project manager was Cory Maxwell.
12  Q.  Did Cory Maxwell see it through until you were
13      terminated?
14  A.  If I remember correctly, yes.  If -- yes.  Yeah.
15  Q.  Was Cory Maxwell fired at some point, or did he stay
16      with Exigent until it went bankrupt?
17  A.  He stayed with Exigent throughout the bankruptcy, but
18      he was later fired.
19  Q.  Why was he fired?
20  A.  Honestly, just attitude, anger, I would say.  He was
21      kind of a loose cannon, I would say, sometimes.
22  Q.  Did you have workmanship issues?
23  A.  No.
24  Q.  What was Kody's last name?
25  A.  Grandchamp.



1  Q.  How do you spell that?
2  A.  G-r-a-n-d-c-h-a-m-p.
3  Q.  And did he work with Exigent until it went bankrupt,
4     or was his employment terminated earlier?
5  A.  He was terminated earlier.
6  Q.  For what reason?
7  A.  He actually quit.
8  Q.  Did he quit during the -- the project at 921 Crescent?
9  A.  Yeah.  He quit, if I remember correctly, in the
10    winter.
11 Q.  Winter of which year?
12 A.  I believe '23.
13 Q.  Do you know why he quit?
14 A.  I think so.
15 Q.  Well, tell me.
16 A.  I believe he quit -- he just -- I don't know.  He
17    couldn't handle the pressure.  He was making mistakes,
18    and I was putting the pressure on him, and I don't
19    think he could handle it.  He didn't believe in the
20    vision maybe.  I don't know.
21 Q.  (Technical difficulties) Saad job either quit or were
22    fired during the job; correct?
23 A.  I'm sorry, can you ask that again, please.
24 Q.  Yeah.  Two of the three people in charge of the Saad
25    job were fired or quit during the pendency of the job?

1  A.  Correct.  Three of the three.
2  Q.  Three of the three.  Cory also; right?
3  A.  Correct.
4  Q.  Three of them quit?
5  A.  Correct.
6  Q.  No, I'm asking you.
7  A.  Oh, sorry.  To clarify, two of them were fired.  One
8     of them quit.
9  Q.  So who -- who managed the job after these three guys
10    were gone?
11 A.  Well, one of them was managing the job at all times.
12    Cory was the latest, and I believe we were terminated
13    when Cory was still with us.
14 Q.  Who was higher?  A project manager or operations
15    manager?
16 A.  Operations manager.
17 Q.  We're going back to Exhibit -- Exhibit F should still
18    be on your screen.  Now we're gonna look at
19    Interrogatory 2.  This is where I ask you to identify
20    the disposition of all the money you or your company
21    received from the Plaintiff.  Do you see that?
22 A.  Yes.
23 Q.  And then in response, you point us to Bates Nos. 369
24    to 383, 470, 473, 477, 496 to 509, as well as employee
25    time records at Bates 22; correct?

1        MR. PHILLIPS:  (Indiscernible) just for
2     clarifying the record.
3        (The court reporter interjects.)
4        He said "22."  I believe that's Bates 522,
5     just so we have a clean record.
6        MR. BIGELMAN:  Correct, Bates 522.
7        THE WITNESS:  Respectfully, I don't know
8     what the Bates portion of this is, "Bates 369-3."  I
9     don't know what any of that is.  I think my attorney
10    put that in there.
11 BY MR. BIGELMAN:
12 Q.  Okay.  Well, I'm about to show you so we can go
13    through it.
14 A.  Okay.  Okay.
15 Q.  What I have put on your screen is Exhibit H.  These
16    are the Bates numbers that we were referring to, and
17    we can look in the bottom right-hand corner.  See
18    where it says "Heitmann 369"?
19        MARKED BY THE REPORTER:
20        DEPOSITION EXHIBIT H
21        11:22 a.m.
22 A.  Yes.
23 Q.  Okay.  So scrolling up, this is an invoice from CRC
24    Contractors Rental; correct?
25 A.  Yes.

1  Q.  For $902.12; correct?
2  A.  Yes.  Yeah, I do remember this.
3  Q.  What is this for?
4  A.  Looks like a rental for a trailer.
5  Q.  Okay.  This is dated April 21, 2023; correct?
6  A.  Yes.
7  Q.  And how do we know this is specific to the 921
8     Crescent job?
9  A.  I would be going off whoever the project manager would
10    be at that time.  My assumption is that was used for
11    transporting equipment and/or materials to the job.
12 Q.  But looking at this document, you're not certain;
13    correct?
14 A.  Not certain about what?
15 Q.  You're not certain which job this was for.
16 A.  I would say yes, I'm certain that it was for the Saad
17    project.
18 Q.  Do you see that "Ship to" here?  Nothing there --
19    there's either nothing there, or something was whited
20    out.  Do you see that?
21 A.  Yes, I see it.
22 Q.  So I made a summary page also for this, "CRC $902.12,
23    Bates No. 369."  Do you see that?
24 A.  Yes.
25 Q.  Yet that's accurate from -- based on what we just

1  looked at; correct?
2  **A. Yes. Where is the number on this? 369, where is that**
3  **number?**
4       MR. PHILLIPS: Right here.
5       Can we go back to the invoice, please,
6  Jeff?
7       MR. BIGELMAN: Sure.
8       **THE WITNESS: Okay. Yeah.**
9       MR. BIGELMAN: Okay.
10      **THE WITNESS: Yes.**
11      MR. BIGELMAN: I just wanted to make an
12  accurate summary. That's all we're trying to do here.
13  BY MR. BIGELMAN:
14  Q. The next one we're gonna look at is 371. Okay?
15  **A. Yes.**
16  Q. Now, here, unlike the prior document we provided,
17     Bates 369 -- here it says, "Ship to Exigent
18     Landscaping, 921 Crescent Drive." Do you see that?
19  **A. Yes.**
20  Q. And this was for -- this was for April 25, 2023, in
21     the amount of $2,189.32; correct?
22  **A. Yes.**
23  Q. And if we go to the summary page, it's reflected
24     there; correct?
25  **A. Yes.**

1  Q. Now we're looking at Bates No. 373. Okay?
2  **A. Yes.**
3  Q. And, again, here there are documents dated April 25,
4     2023. Again, here, the "Ship to Exigent Landscaping,
5     921 Crescent Drive." Do you see that?
6  **A. Yes.**
7  Q. Dated April 25, 2023?
8  **A. Yes.**
9  Q. Amount approved, $2,189.32. Actually, that's the same
10     one. Let's go to the next one. All right. We're
11     looking at Bates 375. Do you see that?
12  **A. Yes.**
13  Q. And this is dated April 27, 2023, and at the top,
14     "Ship to Exigent Landscaping, 921 Crescent Drive." Do
15     you see that?
16  **A. Yes.**
17  Q. Total amount, 1,362.52; correct?
18  **A. Yes.**
19  Q. And it's reflected on Exhibit I -- correct? -- the
20     summary page?
21          MARKED BY THE REPORTER:
22          DEPOSITION EXHIBIT I
23          11:27 a.m.
24  **A. Yes.**
25  Q. Looking at Bates No. 377 -- actually, that's the same

1  one. Again, Bates 379, it's dated April 26, 2023;
2  correct?
3  **A. Yes.**
4  Q. And "Ship to Exigent Landscaping, 921 Crescent Drive,
5     Dearborn"; correct?
6  **A. Yes.**
7  Q. This is $79.50; correct?
8  **A. Yes.**
9  Q. And here on the summary page, we have the amount
10     correct, the name correct -- CRC -- the amount, 79.50,
11     Bates No. 379; correct?
12  **A. Yes.**
13  Q. Now we're looking at Bates No. 381. Do you see that?
14  **A. Yes.**
15  Q. And this is dated May 3, 2023, and here, like the
16     first one we looked at, the "Ship to," there's nothing
17     there. It was either whited out, or it's missing. Do
18     you see that?
19  **A. Yes.**
20  Q. This is for $902.12; correct?
21  **A. Yes.**
22  Q. And it's on the summary page; correct?
23  **A. Yes.**
24  Q. Here, Bates No. 383, this is dated May 8, 2023.
25     Again, there's nothing in the "Ship to" portion;

1  correct?
2  **A. Correct.**
3  Q. And this is the same dollar amount as before, $902.11
4     [sic]; correct?
5  **A. Correct.**
6  Q. And we reflected that in the summary page; correct?
7  **A. Correct.**
8  Q. I'll make this bigger. This is a small one. 470, do
9     you see that?
10  **A. Yes.**
11  Q. This is from Nacy, N-a-c-y. Do you see that?
12  **A. Yes.**
13  Q. This is for $23,500; correct?
14  **A. That's what it says on the estimate, correct.**
15  Q. What is this?
16  **A. I'm sorry?**
17  Q. Do you see the black signature and then the date in
18     black that's handwritten?
19  **A. Yes.**
20  Q. Do you see that? Do you know whose signature that is?
21     Whose is it?
22  **A. Mine. Mine.**
23  Q. Okay. This is for the job at 922 -- 921 Crescent; is
24     that right?
25  **A. Yeah.**



Page 38

1 Q. If we look at the summary page, we have "Nacy 23,500,
2   Bates No. 470"; correct?
3 A. Yes. So that was an estimate there.
4 Q. Was this actually paid, or was this just an estimate?
5 A. It was an estimate. We paid him a portion of a down
6   payment on that.
7 Q. How much of the 23,500 did you pay?
8 A. I don't recall the exact amount.
9 Q. Was it, like, half down or less? More?
10 A. I think half or less, going off memory.
11 Q. Okay. So in our summary page, we're just reflecting
12   what the invoices say. We're not -- I'm not
13   questioning right or wrong. I'm just making a
14   summary. Okay?
15 A. Okay.
16 Q. So the summary reflects what Bates 470 says; correct?
17 A. Correct.
18 Q. Bates 477, this is Upper Canada Stone company; right?
19 A. Yes.
20 Q. It says "Purchase order date, November 11, '21";
21   right?
22 A. Yes. On the sheet in front of me, yes.
23 Q. This says, "Ship to Exigent job 66 West Millington
24   Road, Fostoria, Michigan"; right?
25 A. Yes.

Page 39

1 Q. So this is not for the job at 921 Crescent Drive;
2   correct?
3 A. It should have been. I don't know if my CFO made an
4   error or the stone company made an error. Based on
5   memory, there was a partial ship to that address. A
6   few boulders came off. The majority of the load went
7   to Moe's -- Saad's. It was a split load.
8 Q. Did you do a job -- did Exigent do a job at 66 West
9   Millington Road, Fostoria, Michigan?
10 A. Yes.
11 Q. And what is UCG -- I don't even how to say that word.
12   I'll spell it. G-u-i --
13 A. Guillotine.
14 Q. How do you say it?
15 A. Guillotine.
16 Q. Guillotine. What is that?
17 A. Limestone.
18 Q. Okay. Forty-three and a half tons of limestone?
19 A. Correct.
20 Q. And you think part of it went to 921 Crescent Drive?
21 A. Most of it.
22 Q. "Purchase Order date, November 11, '21." Do you see
23   that?
24 A. Correct.
25 Q. Do you see "Date shipped, November 19, '21"?

Page 40

1 A. Correct.
2 Q. That would have predated the contract with my client
3   Mr. Saad; correct?
4 A. Correct.
5 Q. We listed that here on the summary page; correct?
6 A. Correct.
7 Q. Next one is Bates No. 496, 10-26-22. It's from Boomer
8   Construction Materials, shipped to 921 Crescent Drive;
9   right?
10 A. Yes.
11 Q. And deposit of $6,351.35. Do you see that?
12 A. Yes.
13 Q. Was that paid?
14 A. I believe so.
15 Q. Okay. And what was this for?
16 A. Rebar.
17 Q. Going to the concrete?
18 A. Yeah, for the pool.
19 Q. And if we go back to the summary page, we listed that
20   here; correct?
21 A. Yes.
22 Q. I'm looking at Bates No. 497. This is a Home Depot
23   invoice dated -- I don't see a date, but I do see "Job
24   description, 921 Crescent." Correct?
25 A. Correct.

Page 41

1 Q. Here we go. Here's the date, October 27, 2022;
2   correct?
3 A. Correct.
4 Q. This is for $973.68; correct?
5 A. Correct.
6 Q. And if we go to the summary page, we listed that there
7   properly; correct?
8 A. Correct.
9 Q. If we look at Bates No. 499, this is a document with
10   Exigent Landscaping's letterhead; correct?
11 A. Correct.
12 Q. It says "Receipt," and it's dated October 24, 2022;
13   correct?
14 A. Correct.
15 Q. So tell me what we're looking at here.
16 A. So that was a receipt, it appears, that we paid this
17   guy for work on that property, and it appears that
18   we -- some -- or whoever put this thing together
19   didn't calculate correctly 'cause the rest of it
20   should have been paid. Looks like this is half of it
21   here.
22 Q. Okay. But here it shows that you paid half; you paid
23   6,832.50; right?
24 A. Correct.
25 Q. Okay. And below that, it shows a remaining balance of

1    the same amount; correct?
2 **A. Correct.**
3 Q. Whose signature is that from Exigent?
4 **A. Not sure.**
5 Q. Okay.
6 **A. Assuming my CFO, Dan.**
7 Q. What's Dan's last name?
8 **A. Othlof.**
9 Q. How do you spell that?
10 **A. O-t-h-l-o-f.**
11 Q. Okay. Going to the summary page. We listed that
12    accurately; correct?
13 **A. Yes.**
14 Q. Here we're looking at Bates No. 500. This is -- it's
15    an invoice from A&G Construction billed to Kody
16    Grandchamp of Exigent Design of November 4, 2022;
17    correct?
18 **A. Yep.**
19 Q. In the amount of $10,703.75; correct?
20 **A. Yes.**
21 Q. And can you tell me, by looking at this invoice, what
22    this was for?
23 **A. Looks like excavation of the pool, lazy river.**
24 Q. So they dug the hole; correct?
25 **A. Yes, one of them.**

1 Q. And then what? They deliver some type of stone; is
2    that right?
3 **A. Yes.**
4 Q. What was the stone for?
5 **A. The base, the floor.**
6 Q. Okay. And was this paid?
7 **A. Yes.**
8 Q. And if we go back to the summary, it's listed properly
9    there, "A&G Construction, $10,703.75," Bates No. 500;
10    correct?
11 **A. Yes.**
12 Q. And Bates No. 501, this appears to be the other half
13    for JP Pools, of 6,832, and then some other items;
14    correct?
15 **A. Yes.**
16 Q. Here -- we have it on here. This is not correct.
17    This says "180.40," which it should say "7,012.90";
18    correct?
19 **A. That's correct.**
20 Q. So this needs to be fixed. That's Exhibit I. So
21    Exhibit I, JP Pools, Bates 501, 7,012.90 instead of
22    $180.40; correct?
23 **A. Yes.**
24 Q. I'm looking at Bates No. 502. This is from Fergeson,
25    dated November 14, 2022, which just says "Counter

1    pickup"; correct?
2 **A. Yes.**
3 Q. Total amount, 1,448.44. Do you see that?
4 **A. Yes.**
5 Q. And can you tell me by looking at this document what
6    was purchased?
7       MR. PHILLIPS: Can you zoom in, Jeff,
8    please. Thank you.
9       THE WITNESS: Looks like a bunch of glue
10    for plywood.
11 BY MR. BIGELMAN:
12 Q. Glue?
13 **A. Yeah, plumbing glue.**
14 Q. This document -- I can make it a little bit smaller.
15    Is that -- just looking at it, that would tie it to
16    921 Crescent?
17 **A. Yes. It looks like project managers or operation**
18    **managers would be responsible for putting the job name**
19    **on there, and it looks like they did that, and my CFO**
20    **put that towards his project.**
21 Q. Okay. And if we look at the summary, we have
22    "Fergeson, $1,448.44," Bates No. 502; correct?
23 **A. Yes.**
24 Q. I have another Home Depot receipt, which is dated
25    December 15, '22. "Job description, 921 Crescent";

1    correct?
2 **A. Yes.**
3 Q. $406.97; correct?
4 **A. Yes.**
5 Q. And if we go back to the summary page, it's accurately
6    reflected there; correct?
7 **A. Yes.**
8 Q. So if we look at Bates No. 507, this is a document
9    from Messina, Inc., Concrete; correct?
10 **A. Correct.**
11 Q. Grand total is $16,782.45; correct?
12 **A. What you got highlighted there, yes.**
13 Q. And the -- the credit card receipt shows payments of
14    2,850.87; correct?
15 **A. Yes.**
16 Q. And that's also reflected right here or highlighted
17    where it says "Total." Same amount; correct?
18 **A. Looks like it, yes.**
19 Q. So help me out here. What was paid? Was it the
20    2,850.87 or 16,782.45?
21       MR. PHILLIPS: Jeff, can you zoom out so we
22    can see the entirety of the document, please. Thank
23    you.
24       THE WITNESS: Honestly, I believe the total
25    amount paid was the 26 figure. It might have been

1 in -- he might have been paying per truck. He might
2 have been paying -- I think he shot some shotcrete --
3 going off memory, I think we shot some shotcrete one
4 day and then came back and shot some more shotcrete
5 the next day. Maybe that's why they charged it in
6 payments, but my mind's telling me that 26 number is
7 what was paid by Moe.
8        MR. BIGELMAN:  Okay.
9 BY MR. BIGELMAN:
10 Q.  So looking at the summary sheet, the summary sheet
11     reflects the 16,782.45; correct?
12 A.  Correct.
13 Q.  And you think that maybe should be changed to
14     26,837.61; is that correct?
15 A.  Correct.
16 Q.  Is there any other documentation that would
17     substantiate this figure?
18 A.  No, not that we would have or I would have.
19 Q.  Next one I'm looking at, Bates 508.
20 A.  Okay.
21 Q.  This is San Marino Iron company dated March 16, 2023,
22     for 921 Crescent Drive; correct?
23 A.  Correct.
24 Q.  It shows budget numbers: first, structural aluminum
25     bridge for a total of 24,000; second, structural

1     aluminum grotto for a total of 44,000; correct?
2 A.  Correct.
3 Q.  Was -- looks like it's the second page.  There's a
4     second page here.  It shows a total of 68,000.
5     There's no signatures on the page.  Was this amount
6     ever paid to San Marino, the total amount or a lesser
7     amount or none, if you know?
8 A.  None.  That's just an estimate, it looks like.  We
9     never engaged them on that project.
10 Q.  Okay.  Going to the summary page, I have "San Marino
11     Iron company of 68,000," Bates No. 508.  That should
12     be removed; correct?
13 A.  Correct.
14 Q.  Then for labor, if you remember, employee time records
15     at Bates 522, and if you go to Bates 522, it says
16     "Native document placeholder," and that refers us to
17     a -- to an Excel spreadsheet that was provided.  We
18     saved this in PDF.  So the top of it says, "Time clock
19     export, exported on Tuesday, November 19, 2024."  Did
20     you have some way for your employees to check in,
21     check out?  Is that what we're looking at?
22 A.  Yes.
23 Q.  Okay.
24 A.  For -- to clarify, for laborers and foremen,
25     specifically.  Salary employees didn't.

1 Q.  This is for hourly workers; is that right?
2 A.  Correct.
3 Q.  And if we look at the first one, you broke it down by
4     worker, Jesus Soria; correct?
5 A.  Yep.
6 Q.  And I summed up the amounts here to $2,117.51.  Do you
7     see that?
8 A.  Yes.
9 Q.  That's consistent with the summary page here; correct?
10 A.  Yes.
11 Q.  Next employee, Thomas Galindo, $1,142.60; correct?
12 A.  Yes.
13 Q.  And looking at the summary page, that information is
14     accurate; correct?
15 A.  Yes.
16 Q.  Next employee, Aldo Barajas Tello, T-e-l-l-o,
17     $7,033.95; correct?
18 A.  Yes.
19 Q.  And -- correct?
20 A.  I didn't hear you there.
21 Q.  Aldo Barajas Tello, $7,033.95, is reflected accurately
22     on the summary page; correct?
23 A.  Yes.
24 Q.  Next employee, Sergio Esquivel, E-s-q-u-i-v-e-l,
25     $5,309.56; correct?

1 A.  Yes.
2 Q.  And that's properly reflected on the summary page;
3     correct?
4 A.  Yes.
5 Q.  (Technical difficulties) -- costs, zero.  Do you see
6     that?
7        THE COURT REPORTER:  I think your question
8     may have cut out.
9        MR. BIGELMAN:  Oh, I'm sorry.
10 BY MR. BIGELMAN:
11 Q.  It says "Name, Edward Guest."  Is that a real name or
12     just a placeholder?
13 A.  Honestly, no idea, but I don't have an -- never had an
14     employee named Edward Guest.
15 Q.  Okay.  And in any event, it says "Builder cost, zero";
16     correct?
17 A.  Yes.
18 Q.  Next one, Arturo Ramos?
19 A.  Yes.
20 Q.  $1,704.40; correct?
21 A.  Yes.
22 Q.  That's accurately reflected on the summary page;
23     correct?
24 A.  Yes.
25        MR. PHILLIPS:  Jeff, can you give me one

1  second?  Someone popped into my Teams meeting.  It's
2  showing up on my computer.  I just got to close it.
3  All right.  We're good.
4  BY MR. BIGELMAN:
5  Q.  Next one, Joe Edmonds, and "Builder cost, zero";
6     correct?
7  **A.  "Builder cost, zero," where?**
8  Q.  Right here.
9  **A.  Can't see.**
10 Q.  See it?
11 **A.  Yeah.  Based on that document, it looks like it should**
12    **not be zero, but, yeah.**
13 Q.  Misael Pineda, M-i-s-a-e-l.  Last name, P-i-n-e-d-a.
14    "Total, 643.20."  Do you see that?
15 **A.  Yes.**
16 Q.  That's accurately reflected on the summary; correct?
17 **A.  Yes.**
18 Q.  Eddy Hernandez, "$1,016.76"; correct?
19 **A.  Yes.**
20 Q.  That -- again, that's accurately reflected on the
21    summary page; correct?
22 **A.  Yes.**
23 Q.  Next one, I believe, Noe, N-o-e, Ortega, O-r-t-e-g-a,
24    "$830.84"; correct?
25 **A.  Yes.**

Page 51

1  Q.  That's accurately reflected on the summary page,
2     correct?
3  **A.  Yes.**
4  Q.  Okay.  So one more question.  Based on your
5     interrogatory response, Exigent also paid a sales
6     commission of two and a half percent of the project
7     cost to Avery Petri.  Is that an accurate statement?
8  **A.  Yes.**
9  Q.  So that would have been, what, two and a half percent
10    of what number?
11 **A.  I believe it was a full, total deal of 556- or**
12    **whatever it was.**
13 Q.  By my math, that's 13,900.  Does that sound right?
14        MR. PHILLIPS:  Can the witness check on his
15    calculator?
16 BY MR. BIGELMAN:
17 Q.  In the summary, I have it at 13,788.63.
18 **A.  We might have split the cost of the commission, 'cause**
19    **I assisted on the deal or something like that, if the**
20    **number doesn't line up.**
21 Q.  All right.  So this summary is pretty accurate.  We
22    have to fix JP Pools, Bates No. 501.  It should go
23    from 180.40 to $7,012.90; correct?
24 **A.  JP Pools?**
25 Q.  Yep.

1  **A.  Yes.**
2  Q.  Then Messina, the invoice said 16,782.45, but there
3     was a handwritten notation for 26,837.61; correct?
4  **A.  Yes.**
5  Q.  So we need to adjust that.  And San Marino for 68,000,
6     that needs to be removed; correct?
7  **A.  Correct.**
8  Q.  Okay.  So it brings me to my question.  My client paid
9     you directly -- when I say "you," I mean Exigent
10    Landscaping -- $350,000, and we're not even accounting
11    for -- you're not able to account for even half of
12    that money.
13        MR. PHILLIPS:  Foundation.
14 BY MR. BIGELMAN:
15 Q.  So my question is where did the rest of the money go?
16        MR. PHILLIPS:  Foundation.  Form.
17 BY MR. BIGELMAN:
18 Q.  Go ahead and answer.
19        MR. PHILLIPS:  You can answer.
20        He's just thinking.
21        **THE WITNESS:  I don't know where this was**
22    **orchestrated from, but there's missing -- missing**
23    **stuff on here.**
24 BY MR. BIGELMAN:
25 Q.  This is your discovery response.  We just looked at

Page 53

1     every one of those documents.
2        MR. PHILLIPS:  What's the question?
3  BY MR. BIGELMAN:
4  Q.  The question is Exigent Landscaping received $350,000,
5     and it can only account for maybe half of the money it
6     received, so where did the rest of the money go?
7        MR. PHILLIPS:  Again, same objection,
8     foundation.  You haven't established what it can and
9     can't account for.  You're giving him an incomplete
10    recitation of his interrogatory response.  You haven't
11    laid a proper foundation.
12 BY MR. BIGELMAN:
13 Q.  Go ahead and answer.
14 **A.  I don't understand the question.**
15 Q.  You received -- when I say "you," Exigent Landscaping
16    received $350,000 from my client.  The total summary,
17    before we make adjustments, amounts to 183,000 and
18    change before we back out the $68,000 that San Marino
19    Iron never received and make, you know, minor
20    adjustments, you know, elsewhere.  You're at about
21    $130,000 of the $350,000 that you received.  Where did
22    the rest of the money go?
23 **A.  A vast majority of it went into overhead, fuel.**
24    **There's a lot of receipts that we weren't able to get**
25    **from suppliers.  Keep in mind, this happened over**



1 three years ago and over a year and a half after my
2 corporation filed bankruptcy, and this is just what I
3 have on a personal level based on what my team logged.
4 Q. When you say "overhead," what do you mean by
5 "overhead"?
6 A. Equipment that was used on the project, fuel used to
7 go to and from the project, and fuel used for the
8 equipment on the project, fuel used by --
9 Q. When --
10 MR. PHILLIPS: He's still answering the
11 question.
12 THE WITNESS: -- fuel used by project
13 managers, operations managers, videographer, runners,
14 drivers, employees sometimes, and that's going off
15 memory.
16 BY MR. BIGELMAN:
17 Q. When you say "overhead," would that include office
18 rent, utilities, salaries, stuff like that?
19 A. Correct.
20 Q. Why did my client fire you?
21 MR. PHILLIPS: Calls for speculation. He
22 can't read Mr. Saad's mind.
23 BY MR. BIGELMAN:
24 Q. Did my client ever -- my client Mr. Saad -- did he
25 ever express to you why he fired you?

1 A. Yeah. I believe he said there was a crack in the
2 limestone, which he was unwilling for me to look at,
3 correct, or even show me proof of.
4 Q. This would have been the limestone in the grotto;
5 correct?
6 A. So he claimed, yes.
7 Q. How big would that piece of limestone have been?
8 A. Based off memory --
9 MR. PHILLIPS: Which piece are you speaking
10 of, Jeff?
11 BY MR. BIGELMAN:
12 Q. I'm going to show you guys Exhibit CC.
13 MR. PHILLIPS: You got a line of
14 questioning, but I could use a restroom break when you
15 get an opportunity.
16 MR. BIGELMAN: Let's just finish this, and
17 then we'll take a break.
18 MR. PHILLIPS: Fair enough.
19 MARKED BY THE REPORTER:
20 DEPOSITION EXHIBIT CC
21 12:09 p.m.
22 BY MR. BIGELMAN:
23 Q. Is this an accurate depiction of how you left
24 Mr. Saad's house -- his pool, rather?
25 A. Yeah, I believe so.

1 Q. And when we talk about the -- how did you describe it,
2 the piece that was cracked? What's the term you used?
3 A. Mr. Saad was very vague, and he just said there was a
4 crack in his limestone piece, and he felt
5 uncomfortable.
6 Q. Well, he was referring to this big piece here;
7 correct?
8 A. I have no idea. He didn't describe that.
9 Q. Is this limestone that I'm pointing at here, that
10 covers the grotto?
11 A. Yes.
12 Q. How much does this -- how much would this piece have
13 weighed?
14 A. I don't recall the exact pounds. 10,000 plus off
15 memory. My engineer has it.
16 Q. Okay.
17 MR. BIGELMAN: All right. Do you guys want
18 to take a break here for about 15, 20 minutes?
19 MR. PHILLIPS: Yeah. Jeff, I don't know --
20 well, let me -- we're off the record?
21 THE VIDEOGRAPHER: We are going off the
22 record at 12:10 p.m.
23 (Off the record at 12:10 p.m.)
24 (Back on the record at 12:24 p.m.)
25 THE VIDEOGRAPHER: We are back on the

1 record at 12:24 p.m.
2 BY MR. BIGELMAN:
3 Q. Mr. Heitmann, have you ever been criminally charged
4 with anything?
5 A. Charged? Yes.
6 Q. What have you been charged with?
7 A. I believe it was fraud.
8 Q. In connection with what?
9 A. In my opinion, contractual dispute.
10 Q. Who made the complaint?
11 A. Made the complaint... I signed a
12 non-confidentiality agreement on that. I don't think
13 I need to disclose that.
14 MR. PHILLIPS: Hold on, Jeff. Just give me
15 one second with the client. Go off the record. Yeah,
16 give me one second to talk to him.
17 THE VIDEOGRAPHER: I'm sorry. Did you say
18 you wanted to go off?
19 We are going off the record at 12:26 p.m.
20 (Off the record at 12:26 p.m.)
21 (Back on the record at 12:26 p.m.)
22 THE VIDEOGRAPHER: We are back on the
23 record at 12:26 p.m.
24 MR. PHILLIPS: Jeff, just for the record,
25 without waiving privilege, I was just speaking to my

1  client and discussing that civil things may be subject
2  to a confidentiality agreement. Any public criminal
3  proceedings would not be, and so that I advised him to
4  answer questions with respect to public criminal
5  proceedings, but with respect to any civil proceedings
6  against those particular plaintiffs, we do have a
7  confidentiality agreement.
8  BY MR. BIGELMAN:
9  Q.  Okay. So in regard to criminal charges brought by the
10     State of Michigan or one of its municipalities, what
11     was the basis of the charge?
12 A.  **Fraud.**
13 Q.  Right. Fraud in connection with what?
14 A.  **In my opinion a -- a civil dispute -- I mean -- I'm**
15     **sorry -- a contractual dispute.**
16 Q.  What were the allegations of fraud?
17 A.  **I think they were alleging that I took a deposit and**
18     **wasn't gonna build a pool.**
19 Q.  Were there any allegations of you contracting to build
20     a pool without a residential builder's license?
21 A.  **I believe so.**
22 Q.  And what was the main complaint? What was the
23     customer's name?
24 A.  **Joseph and Angela Hebeka.**
25 Q.  Did you get convicted of these charges?

1  A.  **If I remember correctly, the fraud charges, no, and**
2      **building without a license, no contest or something.**
3  Q.  What court was this in?
4  A.  **Court. . . I think Shelby Township or Macomb. I'm**
5      **not sure.**
6          MR. BIGELMAN: Is that right, Tyler?
7          MR. PHILLIPS: It was -- I don't know if it
8      was in district or circuit. I think it might have
9      been -- it was in Macomb County or Shelby, one of the
10     two, the district court there. I didn't handle the
11     criminal, so I can't really tell you.
12 BY MR. BIGELMAN:
13 Q.  Did you receive jail time, probation, a fine? What
14     happened? What was the punishment?
15 A.  **Eight months' nonreporting probation, if I remember**
16     **correctly.**
17 Q.  Give me one second, please. Do you recall what year
18     the case was?
19 A.  **I think 2024.**
20 Q.  What we're looking at here, this is out of Shelby
21     Township 41A District Court, case ID 23-23-1450-FYFY.
22     False pretenses, $50,000 or more but less than a
23     hundred thousand?
24 A.  **Yes.**
25 Q.  Okay. And a plea of nolo contendere; is that right?

1  A.  **Not sure what that means, but sounds about right.**
2  Q.  Nolo contendere is consistent with no contest.
3  A.  **Okay. Yes.**
4  Q.  There's another one, 23-23-1332-FYFY, same charge,
5      false pretenses. Plea, nolo contendere. Somehow you
6      got it reduced to disorderly person. Is that
7      accurate?
8  A.  **Yes.**
9  Q.  Any other charges aside from what we just spoke about?
10 A.  **Just small stuff when I was, like, 18.**
11 Q.  Okay. Anything else involving fraud?
12 A.  **No.**
13 Q.  This screen is going to be marked as Exhibit K. This
14     is a residential builder's license look-up website.
15     Is that your builder's license there, 242300197?
16         MARKED BY THE REPORTER:
17         DEPOSITION EXHIBIT K
18         12:36 p.m.
19 A.  **I don't know it off memory, but based on the document**
20     **you're showing me, it looks correct.**
21 Q.  Okay. It's got your name here; right?
22 A.  **Yes.**
23 Q.  License issued March 28, 2023; correct?
24 A.  **Yes.**
25 Q.  It's currently suspended; correct?

1  A.  **Correct.**
2  Q.  License complaint is against the company. Your
3      attorney provided this to me yesterday. Are you
4      familiar with this formal complaint?
5  A.  **Yeah.**
6  Q.  Paragraph 19, formal complaint, states that -- this is
7      the allegation. It goes, "Contract with the
8      homeowners included a license number of 802082183 that
9      does not correspond to a residential builder or
10     maintenance and alteration contractor license number
11     issued by the department. Was signed on behalf of
12     Exigent by an unlicensed salesperson and does not
13     contain information regarding a qualified officer."
14     Did I read that allegation properly?
15 A.  **Yes.**
16 Q.  Allegation 20, "To obtain a building permit for the
17     construction, Respondents or someone on their behalf
18     submitted a permit application to Macomb County, which
19     stated that another company, which was duly licensed
20     as a residential builder under the occupational code,
21     was the contractor for homeowners' project." Did I
22     read that properly?
23 A.  **Yes.**
24 Q.  Allegation 21, "The application, which was dated
25     October 6, 2021, included the other company's name,

1   license number, and expiration date in the spots for
2   contractor," slash, "applicant name, builder's license
3   number, and expiration date; however, the contract
4   e-mail address was for someone at
5   exigentdesignbuild.com and the contact phone number
6   was the same number Respondents used on their contract
7   with homeowners." Did I read that properly?
8  A.  Yes.
9  Q.  Paragraph 22, "Despite what was stated on the permit
10     application, the other company was not the contractor
11     for the project. Neither it nor its qualified officer
12     performed construction on the project, and they did
13     not have a contract with the homeowners." Did I read
14     that properly?
15 A.  Yes.
16 Q.  Paragraph 23, "The building permit was issued to the
17     other company, Construction Contractors, LLC, on
18     October 28, 2021"; correct?
19 A.  Yes.
20 Q.  Paragraph 24, "Despite not being licensed, as required
21     by the code, Respondents received payment from the
22     homeowners and performed the construction on the
23     Chaucer Court home." Did I read that properly?
24 A.  Yes.
25 Q.  Who is the owner of the Chaucer Court home?

1  A.  Daniel Carter.
2  Q.  Would you agree that this fact pattern is very similar
3      to the fact pattern in our case here with Mr. Saad?
4  A.  Can you ask the question again, please.
5  Q.  Would you agree that this fact pattern, in
6      paragraphs 19 through 24, is very similar to the fact
7      pattern with Mr. Saad?
8  A.  Similar.
9  Q.  Similar, right. Paragraph 19, "He had a contract with
10     a said license number, 802082183, which did not
11     correspond to a residential builder or a maintenance
12     and alteration contractor license number"; correct?
13 A.  Correct.
14 Q.  Yet you got somebody else to apply for a building
15     permit; correct?
16         MR. PHILLIPS:  Are you asking the document,
17     or are you asking him to admit the allegation?
18         MR. BIGELMAN:  I'm talking about in our
19     case with Mr. Saad.
20         MR. PHILLIPS:  I don't understand your
21     question. Can you rephrase.
22         MR. BIGELMAN:  Sure.
23 BY MR. BIGELMAN:
24 Q.  Just as in with this formal complaint, Exhibit L, the
25     allegation in 19, same thing happened with Mr. Saad.

1   You had a contract with said License No. 802082183,
2   and it didn't correspond to any license; correct?
3         MARKED BY THE REPORTER:
4         DEPOSITION EXHIBIT L
5         12:43 p.m.
6         MR. PHILLIPS:  Form.
7         THE WITNESS:  I disagree.
8  BY MR. BIGELMAN:
9  Q.  Why do you disagree?
10 A.  Because the contract wasn't with just Mohamed. It was
11     with OJ, who was a licensed residential builder and my
12     main point of contact through most of the project. I
13     agree with 19, the license number, it was -- it was on
14     the same contract but -- yeah.
15 Q.  Correct. The license number wasn't the license number
16     at all; correct?
17 A.  It was a business license.
18 Q.  No. There is no such thing as a business license.
19         MR. PHILLIPS:  Are you asking a question,
20     or are you making an affirmative statement to the
21     witness?
22         MR. BIGELMAN:  Okay. Let's go down --
23     let's go down your rabbit hole.
24 BY MR. BIGELMAN:
25 Q.  What business license did Exigent have that you put on

1   your contracts, purporting it to be a license number?
2   What business license?
3  A.  The business of Exigent that was registered with LARA.
4  Q.  What business license? What business license did LARA
5      give you?
6  A.  I believe it was that one --
7  Q.  What --
8  A.  -- that was listed --
9  Q.  A license to do what?
10 A.  Do business.
11 Q.  Just as with the formal complaint, Exigent couldn't
12     get a building permit in its own name, so you used a
13     third party; correct?
14         MR. PHILLIPS:  Form.
15 BY MR. BIGELMAN:
16 Q.  Answer the question.
17         MR. PHILLIPS:  If you understand it.
18         THE WITNESS:  According to the document in
19     front of me, yes.
20 BY MR. BIGELMAN:
21 Q.  Paragraph 21, here the allegation was -- basically
22     everything on the application -- contractor, applicant
23     name, builder's license number, expiration date -- was
24     for a third party, but the contact e-mail was for
25     exigentdesignbuild.com, and if you recall, we looked

1  at the e-mail on all of those applications, and it
2  always went back to brandonheitmann12@yahoo or
3  exigentdesignbuild; correct?
4       MR. PHILLIPS: Compound.
5       Go on if you understand.
6       **THE WITNESS: What was the question?**
7       MR. BIGELMAN: (Technical difficulties),
8  please.
9       MR. PHILLIPS: He asked you what the
10  question was. Oh, you're asking the court reporter.
11  Sorry, Jeff.
12       (The court reporter read back the previous
13  question at 12:47 a.m.)
14       MR. PHILLIPS: Same objection.
15       Go ahead, if you know.
16       **THE WITNESS: I'm going off of 21. I mean,**
17  **yeah, you're reading what is in front of me on 21. My**
18  **attorney handled most of this, and I don't remember**
19  **even looking through this. Well, I remember briefly,**
20  **but it was, like, three years ago, four years ago.**
21       MR. BIGELMAN: No problem. We will refresh
22  your memory. If you want to stretch it out, we'll
23  stretch it out. We can play that game.
24       MR. PHILLIPS: Jeff, can you please keep
25  your comments to questions rather than badgering my

1  document application, October 24, 2022"; correct?
2  A. Yes.
3  Q. Once again, paragraph 17, contractor name,
4  "Construction Contractors"; right?
5  A. Yes.
6  Q. Company e-mail, exigentlandscaping@yahoo.com; correct?
7  A. Yes.
8  Q. Phone number, paragraph 20, "586-489-6680." Whose
9  number is that?
10  A. Amanda's.
11  Q. And we were talking about paragraph 21 before, and
12  just like in the case in the formal complaint, third
13  parties, contractor name, license number, but the
14  contact e-mail address for your company, contact phone
15  number for your company; correct?
16       MR. PHILLIPS: Form.
17  BY MR. BIGELMAN:
18  Q. Answer the question.
19       MR. PHILLIPS: If you know.
20       **THE WITNESS: What is the question?**
21       MR. BIGELMAN: Could you please repeat it.
22       (The court reporter read back the previous
23  question at 12:51 p.m.)
24       MR. PHILLIPS: Form. If you know.
25       **THE WITNESS: I don't understand the**

1  client.
2  BY MR. BIGELMAN:
3  Q. Okay. Let's look here, Exhibit C, "Swimming Pool
4  Permit Application," dated August 31, '22. Do you see
5  that?
6  A. Yes.
7  Q. Contractor information, Construction Contractors,
8  signature purportedly by Hank Bell -- he disputes he
9  ever signed it -- his license number. Then we go to
10  the next page, e-mail address,
11  "bheitmann12@yahoo.com." Do you see that?
12  A. Yes.
13  Q. Okay. Whose phone number is 586-383-8308?
14  A. Exigent. Exigent's old number.
15  Q. Mm-hmm. Let's go look at Exhibit D. It says "Revised
16  documents application, dated September 29, '22";
17  correct?
18  A. Yes. No, I'm familiar with the --
19       (Interruption.)
20  Q. Line 17, "Construction Contractors"?
21  A. Yes.
22  Q. Paragraph 22, e-mail address,
23  "exigentlandscaping@yahoo.com"; right?
24  A. Yes.
25  Q. Let's go look at Exhibit E. This says "Revised

1  question. Is it a question or a statement?
2  BY MR. BIGELMAN:
3  Q. If you don't answer the question, we're gonna continue
4  this exam without a date, or we're going to go in
5  front of a judge and --
6       MR. PHILLIPS: He says he doesn't
7  understand your question, Jeff. Ask a better question
8  that he understands. The witness said he didn't
9  understand your question, so ask a better question.
10  Your question doesn't make any sense. So you can go
11  in front of the judge all you want, but until you ask
12  a better question that the witness understands -- he's
13  not refusing to understand. He's saying he doesn't
14  understand it, so ask a better question.
15       MR. BIGELMAN: You're gonna make a real
16  poor witness. I can tell you that.
17       MR. PHILLIPS: Thanks for your opinion.
18  Limit your comments to questions. Quit badgering my
19  client. Quit (indiscernible) --
20       (Simultaneous speakers.)
21       MR. BIGELMAN: Calm down. Calm down. Calm
22  down, and stop interfering with my exam.
23       MR. PHILLIPS: Ask a better question.
24       MR. BIGELMAN: Shush.
25       MR. PHILLIPS: It's enough from you, too.

HANSON RENAISSANCE
Court Reporters & Video
hansonreporting.com
313.567.8100

1  BY MR. BIGELMAN:
2  Q.  Back to paragraph 21.  We just looked at Exhibits C,
3     D, and E.  Do you recall, or do you want to look at
4     them again?
5  **A.  I do recall that.**
6  Q.  On Exhibits C, D, and E, you had a third-party
7     contractor applying for a permit, and you had your
8     contact e-mail and your phone number; correct?
9  **A.  Correct.**
10 Q.  And Mr. Saad's case, 921 Crescent, Construction
11    Contractors was not -- was not the contractor on the
12    project.  Exigent Landscaping was; correct?
13 **A.  Correct.**
14 Q.  And Mr. Saad's job, at 921 Crescent, a building permit
15    was issued to Construction Contractors and not Exigent
16    Landscaping; correct?
17 **A.  Correct.**
18 Q.  And despite not being licensed, Exigent Landscaping
19    received payments from Mr. Saad; correct?
20       MR. PHILLIPS:  Foundation and form --
21    sorry, I wasn't finished.  Foundation and form.
22       Go ahead.
23    **THE WITNESS:  Correct.**
24 BY MR. BIGELMAN:
25 Q.  That formal complaint we were looking at had

Page 71

1     Complaint Nos. 2300623 and 2200622.  Do you see that?
2  **A.  Yes.**
3  Q.  And you entered into a consent order and stipulation
4     resolving that complaint, the same complaint numbers;
5     correct?
6  **A.  Yes.**
7  Q.  And this states, first sentence, paragraph 2, "The
8     parties have stipulated that the board may enter this
9     consent order"; correct?  Do you see that?
10 **A.  Yes.**
11 Q.  "Therefore, the board finds that the allegations of
12    fact contained in the formal complaint are true and
13    Respondents have violated" -- we'll start with the
14    first one -- "Section 6011 of the occupational code."
15    6011 of the occupational code, "Person shall not
16    engage in or attempt to engage in the practice of an
17    occupation regulated under this act or use a title
18    designated in this act unless the person possesses a
19    license or registration used by the department for
20    their occupation"; correct?
21 **A.  Yes.**
22 Q.  That's what you agreed to; correct?
23 **A.  Yes.**
24 Q.  Then you also agreed to having violated 604(d).
25    604(d), "lack of good moral character"; correct?

Page 72

1  **A.  According to the document, yes.**
2  Q.  That's what you stipulated to; right?
3  **A.  According to the document in front of me.  I don't**
4  **   remember this that much.  It was a long time ago.**
5  Q.  You also stipulated to 604(h), violated any other
6     provision of the act or rule, and (l), not to respond
7     to citation as required by Section 555.  What else do
8     we have?  2411 (2)(e), 2(j), 2(m), "A willful
9     violation of the building laws of the State or the
10    subdivision of the State"; correct?
11 **A.  Yes.**
12 Q.  2411 (2)(j), "Aiding or abetting an unlicensed person
13    to evade this article or knowingly combining or
14    conspiring with or acting as an agent, partner, or
15    associate of an unlicensed person, allowing one's
16    license to be used by an unlicensed person, or acting
17    as or being an obstensible licensed or residential
18    builder or licensed contractor, licensed residential
19    maintenance or alteration contractor for an
20    undisclosed person who does not or shall control,
21    direct" -- "may have the right to control or direct,
22    directly or indirectly, the operations of licensee";
23    correct?
24 **A.  Correct.**
25 Q.  "Workmanship not meeting the standards of the Michigan

Page 73

1     residential code"; correct?
2  **A.  I don't know.  Was that on there?  Okay.**
3  Q.  We also have 2404(a), "Licensee shall, as part of the
4     contract, provide information relating to his or her
5     individual license and to any license issued to that
6     person as a qualifying officer of another entity";
7     correct?
8  **A.  Yes.**
9  Q.  Michigan Administrative Code, Rule 338.1551 (5), "All
10    construction, renovations, alterations, or repairs
11    must comply with Michigan construction code"; correct?
12 **A.  Yes.**
13 Q.  Then you had another license complaint -- two more --
14    Complaint No. 2300616 and 2300759, which was also
15    resolved by consent order and stipulation; correct?
16 **A.  Yes.**
17 Q.  And here, again, it's almost exactly the same.  "The
18    board finds that the allegations of fact contained in
19    the formal complaint are true and the Respondents have
20    violated Section 604(1), 2411(2)(e), 2411(2)(j),
21    2404(a), and 604(h) of the occupational code";
22    correct?
23       MARKED BY THE REPORTER:
24       DEPOSITION EXHIBIT M
25       1:03 p.m.

Page 74

1  A. Yes.
2  Q. As a result of these complaints, your residential
3     builder's license has been suspended; correct?
4  A. Yes.
5  Q. Do you recall being sued by Alex and Rebecca Boyd?
6  A. Yes.
7  Q. Paragraph 16, they allege that your contract with
8     them, you had "License No. 802082183." Do you see
9     that?
10        MARKED BY THE REPORTER:
11        DEPOSITION EXHIBIT T
12        1:04 p.m.
13        MR. PHILLIPS: No. The document's not on
14     the screen, Jeff.
15        MR. BIGELMAN: Oh, I'm sorry.
16 BY MR. BIGELMAN:
17 Q. Do you see it now?
18 A. Yes.
19 Q. Sixteen; correct?
20 A. Yes.
21 Q. And they allege that Exigent was never a licensed
22    residential builder during their relationship with the
23    Boyds; correct?
24 A. Yes.
25 Q. And in paragraph 18, that they paid a substantial

Page 75

1     portion of their respective contract price to Exigent;
2     correct?
3  A. Yes.
4  Q. In paragraph 19, they allege that "After execution of
5     the contract with the Boyds, the Defendants knowingly
6     and falsely represented the Macomb Township officials,
7     that the Plaintiff executed documents with Defendant
8     Construction Contractors, LLC, and Henry Girard Bell."
9     That's what they allege; correct?
10 A. Yes.
11 Q. Paragraph 20, this was also for the construction of an
12    in-ground swimming pool; correct?
13 A. Yes.
14 Q. Paragraph 21, allege that Exigent "failed to timely or
15    properly construct the swimming pool, necessitating
16    the removal of their respective pools"; correct?
17 A. Yes.
18 Q. And you were also sued by Joseph and Angela Hebeka;
19    correct?
20        MARKED BY THE REPORTER:
21        DEPOSITION EXHIBIT U
22        1:06 p.m.
23 A. Yes.
24 Q. You can see that on the screen it's marked as
25    Exhibit U. For the record, the Boyd exhibit was

Page 76

1     Exhibit T. Here they allege, at paragraph 13, that
2     the contract listed a license number of 802082183,
3     which is not a license number at all. That's what
4     they allege; correct?
5  A. Yes.
6  Q. And then they allege, at paragraph 14, "Michigan law
7     requires an individual or entity to be licensed as a
8     residential builder when engaging in swimming pool
9     installation or alteration"; correct?
10 A. Yes.
11 Q. Then they claim, paragraph 15, that "Exigent
12    fraudulently held itself out as a licensed
13    contractor"; correct?
14 A. Yes.
15 Q. Paragraph 16, that you fraudulently held yourself out
16    as a licensed contractor; correct?
17 A. Yes.
18        MR. PHILLIPS: You're asking if that's what
19     they allege?
20        MR. BIGELMAN: That's correct.
21 BY MR. BIGELMAN:
22 Q. Exhibit V, this is a complaint by Daniel Cater. Is
23    that how you say it?
24        MARKED BY THE REPORTER:
25        DEPOSITION EXHIBIT V

Page 77

1        1:07 p.m.
2  A. That's a typo. It's meant to be "Carter."
3  Q. Okay. Daniel Carter alleges, at paragraph 9, that
4     your contract with him, stated at the bottom of each
5     page, that License No. 802082183 inferred that Exigent
6     was a licensed residential builder. That's his
7     allegation; correct?
8  A. Correct.
9  Q. Paragraph 10, he alleges that neither you or Exigent
10    was a licensed residential builder during their --
11    during the relationship with him; correct?
12 A. Yes.
13 Q. Paragraph 11, he alleges that during the permit
14    process, that you knowingly and falsely represented to
15    Macomb Township Building Officials that "Plaintiff
16    contracted with licensed residential builders
17    Construction Contractors and Henry Girard Bell";
18    correct?
19 A. Yes.
20 Q. Paragraph 12, he alleges, "Based on said false
21    representations, Macomb Township Building Officials
22    approved permits for the construction of an in-ground
23    swimming pool at Plaintiff's residence"; correct?
24 A. Yes.
25 Q. Paragraph 13, he alleges that "Plaintiff paid a



1 substantial portion of the contract price to Exigent
2 Landscaping, LLC"; correct?
3 A. Yes.
4 Q. Then he alleges, at 14, that you "failed to properly
5 construct the swimming pool, necessitating the removal
6 of the pool and otherwise causing substantial monetary
7 damages to be suffered by the Plaintiff"; correct?
8 A. Yes, allegedly. That's what he's alleging.
9          MARKED BY THE REPORTER:
10         DEPOSITION EXHIBIT W
11         1:09 p.m.
12 Q. This is Exhibit W. These are your Responses to
13 Plaintiff's Requests for Admission, Third Set of
14 Interrogatories. I'm going to draw your attention to
15 Interrogatory 4, where I ask --
16         MR. PHILLIPS: Put it on the screen,
17 please.
18         MR. BIGELMAN: Excuse me?
19         MR. PHILLIPS: Put them on the screen,
20 please. Thank you.
21         MR. BIGELMAN: I'm sorry.
22 BY MR. BIGELMAN:
23 Q. Interrogatory 4, "Identify all projects since
24 January 11, '21, where you have used a residential
25 builder's license to obtain a permit that was not your

1 I'm just gonna cut to the chase on this.
2          MR. BIGELMAN: Okay.
3          MR. PHILLIPS: I think it was five.
4          THE WITNESS: Sounds about right.
5 BY MR. BIGELMAN:
6 Q. We know it was three. We just looked at those
7 complaints, not counting my client, so that would be
8 four, and then I have another client, Mehra,
9 M-e-h-r-a, so that would be five. Are there any
10 others?
11 A. No, not that I can remember.
12 Q. Showing you what's being marked as Exhibit Y. This is
13 a license to do business in the city of Dearborn that
14 Construction Contractors obtained. Do you see that?
15 Can you see that, Mr. Heitmann?
16         MARKED BY THE REPORTER:
17         DEPOSITION EXHIBIT Y
18         1:14 p.m.
19 A. Yes.
20 Q. My question to you is did Exigent Landscaping ever
21 obtain a license to do business in the city of
22 Dearborn while it was working on Mr. Saad's property
23 at 921 Crescent?
24 A. Not that I can recall. At some point, when I got
25 licensed, I applied, but I don't know if it was before

1 own," and you took the Fifth Amendment in response to
2 that. Is that still your response to that question?
3          MR. PHILLIPS: I'm going to advise you to
4 continue that.
5          THE WITNESS: Yes.
6          MR. BIGELMAN: Okay.
7 BY MR. BIGELMAN:
8 Q. Your wife testified earlier that when she first
9 started her company, Resilient Outdoor Living, that
10 that operated under your residential builder's
11 license. Is that correct?
12 A. No. We never actually operated. We never did
13    anything that required a permit or a license.
14 Q. Did you associate your license with Resilient Outdoor
15 Living, whether you did work or not?
16 A. I believe I did for a short period of time.
17 Q. How many different individuals have sued you or
18 Exigent in the past five years?
19 A. How many individual -- can you repeat that one more
20    time, please.
21 Q. How many individuals have sued you or Exigent in the
22 last five years?
23 A. I believe four.
24 Q. Well, we know three.
25         MR. PHILLIPS: Jeff, I think it was five.

1 or after I was terminated. I can't remember.
2 Q. Did anyone ever issue a license for Exigent to do
3 business there?
4 A. Can you repeat that, please.
5 Q. Did the City of Dearborn ever issue a license for
6 Exigent Landscaping to do business in its town?
7 A. I don't remember. I don't recall.
8          MR. BIGELMAN: I don't have any more
9 questions, subject to redirect if you're gonna have
10 some questions.
11         MR. PHILLIPS: In ten minutes I'll find out
12 if I do.
13         Can we go off the record.
14         THE VIDEOGRAPHER: We are going off the
15 record at 1:16 p.m.
16         (Off the record at 1:16 p.m.)
17         (Back on the record at 1:21 p.m.)
18         THE VIDEOGRAPHER: We are back on the
19 record at 1:21 p.m.
20             EXAMINATION
21 BY MR. PHILLIPS:
22 Q. Brandon, just a couple quick questions. You have
23 referred to Hank Bell as your uncle in the past. Why
24 have you done that?
25 A. I viewed him as my uncle. I've known him for ten or



Page 82

1  fifteen years. He's technically my cousin's cousin or
2  something like that. He's been in the family for a
3  while, and I look to him as, like, a mentor. He was
4  helping me throughout the permit process and was
5  helping me with my license and stuff.
6  Q. Did Hank Bell or Construction Contractors review the
7     permit drawings before they were submitted on this
8     project?
9  A. Yes. They were e-mailed to him.
10  Q. And Hank Bell and Construction Contractors, did they
11     authorize you to use their signature?
12  A. Yes.
13  Q. Okay. So when you said you were an authorized agent
14     previously, what did you mean by that?
15  A. I think I -- we had a -- we were working together to
16     build projects. I wasn't officially a partner at his
17     firm, but we were working together to build projects.
18     I had his approval to work with him.
19  Q. And, lastly --
20     MR. PHILLIPS: Jeff, if you could pop up
21     Exhibit H. I believe that's the invoices for the
22     trailer, the first one.
23     MR. BIGELMAN: Do you know which Bates
24     number?
25     MR. PHILLIPS: It was the very first page.

Page 83

1  I think it's probably 529, if I had to guess, but it's
2  the very first page, one of the ones with the blank
3  "Ship to."
4     MR. BIGELMAN: 369?
5     MR. PHILLIPS: Yeah, that will work. Okay.
6  BY MR. PHILLIPS:
7  Q. Brandon, do you have any reason why you believe the
8     "Ship to" address might have been blank on these
9     invoices, some of these invoices from CRC?
10  A. Yeah. I think usually what -- we pick up the trailer
11     from the place -- rental place.
12  Q. So they wouldn't be delivering to the jobsite. You
13     would be picking it up at the rental company?
14  A. Correct.
15     MR. PHILLIPS: Nothing further.
16     MR. BIGELMAN: No redirect. Mr. Heitmann,
17  thank you for your time.
18     Mr. Phillips, thank you for your time.
19     And, especially, Susannah, thank you for
20  your time.
21     THE VIDEOGRAPHER: This concludes today's
22  testimony. We are off the record at 1:24 p.m.
23     (Off the video record at 1:24 p.m.)
24     MR. BIGELMAN: We're going to be ordering
25  the transcript, please.

Page 84

1     MR. PHILLIPS: Yes. Can I do a four-page
2  mini, please.
3     (The deposition was concluded at 1:25 p.m.)

Page 85

1                    CERTIFICATE OF NOTARY
2  STATE OF MICHIGAN )
3                    ) SS
4  COUNTY OF OAKLAND )
5
6          I, Susanne Ellen Gorman, a Notary Public in
7     and for the above county and state, do hereby certify
8     that the above deposition was taken before me via
9     virtual technology; that the witness was by me first
10    duly sworn to testify to the truth and nothing but the
11    truth; that the foregoing questions asked and answers
12    made by the witness were duly recorded by me
13    stenographically and reduced to computer
14    transcription; that this is a true, full, and correct
15    transcript of my stenographic notes so taken; and that
16    I am not related to, nor of counsel to either party,
17    nor interested in the event of this cause.
18
19
20
21         Susanne Ellen Gorman, CSR-9271, RPR
22         Notary Public,
23         Oakland County, Michigan.
24
25  My commission expires:  September 14, 2029

## $

**$1,016.76** 50:18

**$1,142.60** 48:11

**$1,448.44** 44:22

**$1,704.40** 49:20

**$10,703.75** 42:19 43:9

**$100,000** 24:21

**$130,000** 53:21

**$15** 20:2

**$16,782.45** 45:11

**$180.40** 43:22

**$2,117.51** 48:6

**$2,189.32** 34:21 35:9

**$23,500** 37:13

**$250,000** 26:2

**$26,348** 25:3

**$350,000** 26:24 52:10 53:4,16,21

**$406.97** 45:3

**$42** 20:2

**$5,309.56** 48:25

**$5,506.72** 26:9

**$5,718.87** 27:6

**$50,000** 24:12 59:22

**$6,351.35** 40:11

**$68,000** 53:18

**$7,012.90** 51:23

**$7,033.95** 48:17,21

**$7,620.87** 27:7

**$79.50** 36:7

**$830.84** 50:24

**$902.11** 37:3

**$902.12** 33:1,22 36:20

**$973.68** 41:4

## (

**(2)(e)** 72:8

**(2)(j)** 72:12

**(5)** 73:9

**(l)** 72:6

## 1

**1** 13:16 17:3,8,14 22:12 24:8,13, 17 26:7 27:7

**1,362.52** 35:17

**1,448.44** 44:3

**10** 77:9

**10,000** 56:14

**10-24-22** 22:6

**10-26-22** 40:7

**10:24** 5:3,7

**10:25** 6:4,5

**10:27** 6:6,8

**10:36** 10:18

**10:45** 15:21

**10:49** 16:16

**10:57** 20:14

**11** 38:20 39:22 77:13 78:24

**11:01** 22:9

**11:04** 24:3,6

**11:22** 32:21

**11:27** 35:23

**12** 77:20

**12:09** 55:21

**12:10** 56:22,23

**12:24** 56:24 57:1

**12:26** 57:19,20,21,23

**12:36** 60:18

**12:43** 64:5

**12:47** 66:13

**12:51** 68:23

**13** 76:1 77:25

**13,788.63** 51:17

**13,900** 51:13

**14** 25:4 43:25 76:6 78:4

**15** 27:7 28:16 44:25 56:18 76:11

**16** 46:21 74:7 76:15

**16,782.45** 45:20 46:11 52:2

**17** 21:12 22:25 67:20 68:3

**18** 24:21 60:10 74:25

**180.40** 43:17 51:23

**183,000** 53:17

**19** 39:25 47:19 61:6 63:6,9,25 64:13 75:4

**1:03** 73:25

**1:04** 74:12

**1:06** 75:22

**1:07** 77:1

**1:09** 78:11

**1:14** 80:18

**1:16** 81:15,16

**1:21** 81:17,19

**1:24** 83:22,23

**1:25** 84:3

## 2

**2** 17:6 21:12 23:17 31:19 71:7

**2(j)** 72:8

**2(m)** 72:8

**2,850.87** 45:14,20

**20** 23:5 28:16 56:18 61:16 68:8 75:11

**2021** 61:25 62:18



**2022** 12:1 13:18,20 14:1 15:7,9,
13 16:3,8,25 17:4,9,12,14,17
20:7 23:19 24:21 25:5,17,24
41:1,12 42:16 43:25 68:1

**2023** 26:18 27:7 33:5 34:20 35:4,
7,13 36:1,15,24 46:21 60:23

**2024** 47:19 59:19

**2025** 5:2,7

**21** 33:5 38:20 39:22,25 61:24
65:21 66:16,17 68:11 70:2 75:14
78:24

**22** 5:2,7 10:25 14:18 15:5,12 16:2
17:2 19:6 20:19 21:18 23:1
31:25 32:4 44:25 62:9 67:4,16,
22

**2200622** 71:1

**23** 21:15 23:10 30:12 62:16

**23,500** 38:1,7

**23-23-1332-FYFY** 60:4

**23-23-1450-FYFY** 59:21

**2300616** 73:14

**2300623** 71:1

**2300759** 73:14

**23rd** 26:9

**24** 23:19 41:12 62:20 63:6 68:1

**24,000** 46:25

**2404(a)** 73:3,21

**2411** 72:8,12

**2411(2)(e)** 73:20

**2411(2)(j)** 73:20

**242300197** 60:15

**25** 20:7 34:20 35:3,7

**25th** 19:6

**26** 36:1 45:25 46:6

**26,837.61** 46:14 52:3

**27** 10:25 12:1 14:1,17 15:5,12
16:2 17:2,12 35:13 41:1

**28** 60:23 62:18

**29** 20:19 67:16

---

**3**

**3** 36:15

**30** 25:16,24

**31** 16:25 17:17 67:4

**338.1551** 73:9

**369** 31:23 32:18 33:23 34:2,17
83:4

**369-3** 32:8

**371** 34:14

**373** 35:1

**375** 35:11

**377** 35:25

**379** 36:1,11

**381** 36:13

**383** 31:24 36:24

---

**4**

**4** 16:6 26:18 42:16 78:15,23

**40** 14:8

**41A** 59:21

**44,000** 47:1

**470** 31:24 37:8 38:2,16

**473** 31:24

**477** 31:24 38:18

**496** 31:24 40:7

**497** 40:22

**499** 41:9

---

**5**

**5** 13:18,20 14:1 15:7,9,12 16:3
17:4,9,14

**500** 42:14 43:9

**501** 43:12,21 51:22

**502** 43:24 44:22

**507** 45:8

**508** 46:19 47:11

**509** 31:24

**522** 32:4,6 47:15

**529** 83:1

**555** 72:7

**556-** 51:11

**55949** 19:3

**586-383-8308** 67:13

**586-489-6680** 23:5 68:8

**5th** 17:10

---

**6**

**6** 61:25

**6,832** 43:13

**6,832.50** 41:23

**6011** 71:14,15

**604(1)** 73:20

**604(d)** 71:24,25

**604(h)** 72:5 73:21

**643.20** 50:14

**66** 38:23 39:8

**68,000** 47:4,11 52:5

---

**7**

**7** 22:15

**7,012.90** 43:17,21

**79.50** 36:10

---

**8**

**8** 36:24

**802082183** 11:11 61:8 63:10 64:1

74:8 76:2 77:5

---

**9**

**9** 77:3

**921** 11:2 12:7 20:21 22:12 28:5,
14 30:8 33:7 34:18 35:5,14 36:4
37:23 39:1,20 40:8,24 44:16,25
46:22 70:10,14 80:23

**922** 37:23

---

**A**

**A&g** 42:15 43:9

**a.m.** 5:3,7 6:4,5,6,8 10:18 15:21
16:16 20:14 22:9 24:3,6 32:21
35:23 66:13

**abetting** 72:12

**account** 52:11 53:5,9

**accounted** 26:11,14,21 27:10

**accounting** 52:10

**accurate** 27:2,13 33:25 34:12
48:14 51:7,21 55:23 60:7

**accurately** 42:12 45:5 48:21
49:22 50:16,20 51:1

**act** 71:17,18 72:6

**acting** 72:14,16

**address** 18:20 19:3,5 22:12 39:5
62:4 67:10,22 68:14 83:8

**adjust** 52:5

**adjustments** 53:17,20

**Administrative** 73:9

**Admission** 78:13

**admit** 63:17

**advise** 14:2 79:3

**advised** 58:3

**affirmative** 64:20

**agent** 21:1,7 72:14 82:13

**agree** 18:15 27:13 63:2,5 64:13

**agreed** 71:22,24

**agreement** 57:12 58:2,7

**ahead** 8:14 10:3 21:4 52:18
53:13 66:15 70:22

**Aiding** 72:12

**alcohol** 8:7

**Aldo** 48:16,21

**Alex** 74:5

**allegation** 61:7,14,16,24 63:17,
25 65:21 77:7

**allegations** 58:16,19 71:11 73:18

**allege** 74:7,21 75:4,9,14 76:1,4,6,
19

**allegedly** 78:8

**alleges** 77:3,9,13,20,25 78:4

**alleging** 58:17 78:8

**allowing** 72:15

**alteration** 61:10 63:12 72:19 76:9

**alterations** 73:10

**aluminum** 46:24 47:1

**Amanda** 5:22 18:23

**Amanda's** 5:20 19:5 23:9 68:10

**Amendment** 79:1

**amount** 9:8 13:13 24:9 26:8
34:21 35:9,17 36:9,10 37:3 38:8
42:1,19 44:3 45:17,25 47:5,6,7

**amounts** 27:6 48:6 53:17

**and/or** 33:11

**Angela** 58:24 75:18

**anger** 29:20

**answering** 17:24 54:10

**answers** 8:19,21

**apologize** 12:22

**appears** 41:16,17 43:12

**applicant** 62:2 65:22

**application** 16:22 17:16 20:16
22:5 61:18,24 62:10 65:22 67:4,
16 68:1

**applications** 66:1

**applied** 80:25

**apply** 63:14

**applying** 70:7

**approval** 14:25 82:18

**approved** 35:9 77:22

**April** 26:9 33:5 34:20 35:3,7,13
36:1

**Archie** 28:22 29:10

**Archie's** 28:24

**article** 72:13

**Arturo** 49:18

**assisted** 51:19

**assisting** 14:7

**associate** 72:15 79:14

**Assuming** 42:6

**assumption** 33:10

**attached** 13:14 15:14 22:16

**attempt** 71:16

**attention** 78:14

**attitude** 29:20

**attorney** 11:22 32:9 61:3 66:18

**attorneys** 5:8

**August** 13:18,20 14:1 15:7,9,12
16:3,7,25 17:4,9,10,14,17 19:6
20:7 24:21 27:7 67:4

**authorize** 82:11

**authorized** 21:1,7,15 23:10 82:13

**availability** 16:9

**Avery** 12:1,10,12 13:9 51:7

---

**B**

**back** 6:6,7 15:20 17:12 23:23

25:7,15 26:11,17,21 27:4 31:17
34:5 40:19 43:8 45:5 46:4 53:18
56:24,25 57:21,22 66:2,12 68:22
70:2 81:17,18

**background** 6:23

**badgering** 66:25 69:18

**balance** 41:25

**bank** 19:25 27:20

**bankrupt** 29:16 30:3

**bankruptcy** 29:17 54:2

**Barajas** 48:16,21

**base** 43:5

**based** 33:25 39:4 50:11 51:4
54:3 55:8 60:19 77:20

**basically** 65:21

**basis** 58:11

**Bates** 11:19 31:23,25 32:4,6,8,16
33:23 34:17 35:1,11,25 36:1,11,
13,24 38:2,16,18 40:7,22 41:9
42:14 43:9,12,21,24 44:22 45:8
46:19 47:11,15 51:22 82:23

**beginning** 28:9

**behalf** 5:10,13 61:11,17

**believed** 29:2

**Bell** 9:19 10:11,12 18:12 20:5
67:8 75:8 77:17 81:23 82:6,10

**Bell's** 14:21 18:8

**BH27** 11:22

**bheitmann12@yahoo.com**
18:20 19:1

**bheitmann12@yahoo.com.**
67:11

**big** 55:7 56:6

**Bigelman** 5:10,19 6:2,9,14,17,20,
22 8:18,22 9:1 10:6 12:21 13:2,
6,8,23 14:15 15:19,24 16:18,19
18:2 21:6,11,25 22:3 32:6,11
34:7,9,11,13 44:11 46:8,9 49:9,
10 50:4 51:16 52:14,17,24 53:3,
12 54:16,23 55:11,16,22 56:17

57:2 58:8 59:6,12 63:18,22,23
64:8,22,24 65:15,20 66:7,21
67:2 68:17,21 69:2,15,21,24
70:1,24 74:15,16 76:20,21
78:18,21,22 79:6,7 80:2,5 81:8
82:23 83:4,16,24

**bigger** 37:8

**billed** 42:15

**bit** 8:3 28:12 44:14

**black** 37:17,18

**blank** 83:2,8

**board** 71:8,11 73:18

**Boomer** 40:7

**bottom** 11:10,18 20:1 25:10
32:17 77:4

**boulders** 39:6

**Boyd** 74:5 75:25

**Boyds** 74:23 75:5

**Brandon** 5:5,14 8:15 10:3,14
18:16 21:15 81:22 83:7

**brandonheitmann12@yahoo**
66:2

**Braunz** 23:11

**break** 55:14,17 56:18

**bridge** 46:25

**briefly** 66:19

**brings** 52:8

**broke** 24:25 48:3

**brought** 58:9

**budget** 46:24

**build** 9:24 11:5 58:18,19 82:16,
17

**builder** 49:15 50:5,7 61:9,20
63:11 64:11 72:18 74:22 76:8
77:6,10

**builder's** 7:15 11:7,13 13:21,25
14:3 15:13 20:8 23:20 25:24
26:4 58:20 60:14,15 62:2 65:23
74:3 78:25 79:10

**builders** 77:16

**building** 9:10 16:9 59:2 61:16
62:16 63:14 65:12 70:14 72:9
77:15,21

**bunch** 44:9

**business** 64:17,18,25 65:2,3,4,
10 80:13,21 81:3,6

---

**C**

---

**calculate** 41:19

**calculator** 51:15

**call** 12:19,24

**called** 5:15 9:17,18 11:19

**Calls** 54:21

**Calm** 69:21

**Canada** 38:18

**cannon** 29:21

**card** 45:13

**Carter** 63:1 77:2,3

**case** 5:21 59:18,21 63:3,19 68:12
70:10

**Cater** 76:22

**causing** 78:6

**CFO** 39:3 42:6 44:19

**change** 13:16 16:3 17:3,6,8,14
53:18

**changed** 46:13

**character** 71:25

**charge** 30:24 58:11 60:4

**charged** 46:5 57:3,5,6

**charges** 58:9,25 59:1 60:9

**chart** 24:15,17

**chase** 80:1

**Chaucer** 62:23,25

**check** 47:20,21 51:14

**circuit** 59:8

citation 72:7

city 14:24 22:13 80:13,21 81:5

civil 58:1,5,14

claim 76:11

claimed 27:19 55:6

claiming 27:21

clarify 31:7 47:24

clarifying 32:2

classes 7:8

clean 32:5

clear 8:17,23

client 40:2 52:8 53:16 54:20,24 57:15 58:1 67:1 69:19 80:7,8

clock 47:18

close 50:2

closed 16:17

CO1 13:15

code 61:20 62:21 71:14,15 73:1, 9,11,21

college 7:4,10

combining 72:13

comments 66:25 69:18

commission 13:9 51:6,18

communicating 28:1,4

Community 7:10

company 7:23,25 8:2 9:5,7,9,14, 16 15:25 21:12,18 22:25 23:5 24:9 26:3,8 27:17 29:3 31:20 38:18 39:4 46:21 47:11 61:2,19 62:10,17 68:6,14,15 79:9 83:13

company's 61:25

complaint 57:10,11 58:22 61:2,4, 6 63:24 65:11 68:12 70:25 71:1, 4,12 73:13,14,19 76:22

complaints 74:2 80:7

comply 73:11

Compound 66:4

computer 50:2

concluded 84:3

concludes 83:21

concrete 25:14 40:17 45:9

conditions 8:6

confidentiality 58:2,7

connection 57:8 58:13

consent 71:3,9 73:15

consistent 48:9 60:2

conspiring 72:14

construct 75:15 78:5

construction 14:8 15:25 20:4 21:1,7,12 23:1 40:8 42:15 43:9 61:17 62:12,17,22 67:7,20 68:4 70:10,15 73:10,11 75:8,11 77:17,22 80:14 82:6,10

contact 62:5 64:12 65:24 68:14 70:8

contacts 14:24

contained 71:12 73:18

contendere 59:25 60:2,5

contest 59:2 60:2

contingent 16:8

continuation 26:6

continue 13:4 69:3 79:4

contract 12:4,8 14:17 15:5 17:3 40:2 61:7 62:3,6,13 63:9 64:1, 10,14 73:4 74:7 75:1,5 76:2 77:4 78:1

contracted 77:16

contracting 58:19

contractor 25:13 61:10,21 62:2, 10 63:12 65:22 67:7 68:3,13 70:7,11 72:18,19 76:13,16

Contractors 15:25 20:5 21:2,8, 12 23:1 32:24 62:17 67:7,20 68:4 70:11,15 75:8 77:17 80:14

82:6,10

contracts 65:1

contractual 57:9 58:15

control 9:18 72:20,21

conversations 27:25

convicted 58:25

corner 10:20 32:17

corporation 54:2

correct 6:15,18 7:16,21 9:2,3,21, 22,25 11:3,5,6,8,9,14,16,17 12:2 13:2,18,21,24 14:18 15:5,6,14, 22 16:1,4,5,10,11 17:4,14,15,17, 18,20,23,24 18:18,19,21,22,23, 24 19:16,17 20:8,9,17,19,21 22:13,18 23:3,11,12,14,15,20,21 24:11,13,14,16,18,19,21,22,23, 24 25:1,2,5,6,8,9,12,17,19,22,25 26:1,4,5,9,12,15,19,22 27:8,11, 22 28:22 30:22 31:1,3,5,25 32:6, 24 33:1,5,13 34:1,21,24 35:17, 19 36:2,5,7,10,11,20,22 37:1,2, 4,5,6,7,13,14 38:2,16,17 39:2, 19,24 40:1,3,4,5,6,20,24,25 41:2,3,4,5,7,8,10,11,13,14,24 42:1,2,12,17,19,24 43:10,14,16, 18,19,22 44:1,22 45:1,3,6,9,10, 11,14,17 46:11,12,14,15,22,23 47:1,2,12,13 48:2,4,9,11,14,17, 19,22,25 49:3,16,20,23 50:6,16, 18,21,24 51:2,23 52:3,6,7 54:19 55:3,5 56:7 60:20,23,25 61:1 62:18 63:12,13,15 64:2,15,16 65:13 66:3 67:17 68:1,6,15 70:8, 9,12,13,16,17,19,23 71:5,9,20, 22,25 72:10,23,24 73:1,7,11,15, 22 74:3,19,23 75:2,9,12,16,19 76:4,9,13,16,20 77:7,8,11,18,23 78:2,7 79:11 83:14

correctly 14:23 27:24 29:14 30:9 41:19 59:1,16

correspond 61:9 63:11 64:2

Cory 29:11,12,15 31:2,12,13

cost 49:15 50:5,7 51:7,18

costs 49:5

Counter 43:25

counting 80:7

County 59:9 61:18

couple 81:22

court 5:8 8:20 15:20 32:3 49:7
59:3,4,10,21 62:23,25 66:10,12
68:22

cousin 82:1

cousin's 9:14,15 82:1

covers 56:10

crack 55:1 56:4

cracked 56:2

CRC 32:23 33:22 36:10 83:9

credit 45:13

Credited 27:5

Crescent 11:2 12:7 20:21 22:13
28:5,15 30:8 33:8 34:18 35:5,14
36:4 37:23 39:1,20 40:8,24
44:16,25 46:22 70:10,14 80:23

criminal 58:2,4,9 59:11

criminally 57:3

customer's 58:23

cut 49:8 80:1

---

**D**

damages 78:7

Dan 42:6

Dan's 42:7

Daniel 63:1 76:22 77:3

date 14:22 16:7 17:2 22:6 37:17
38:20 39:22,25 40:23 41:1 62:1,
3 65:23 69:4

dated 10:25 13:18 16:25 17:8
20:19 33:5 35:3,7,13 36:1,15,24
40:23 41:12 43:25 44:24 46:21
61:24 67:4,16

day 46:4,5

deal 51:11,19

Dear 11:2

Dearborn 11:3 12:7 22:13 36:5
80:13,22 81:5

December 25:4,16,24 44:25

Defendant 5:13 75:7

Defendant's 24:7

Defendants 75:5

degree 7:9

deliver 43:1

delivering 83:12

department 61:11 71:19

depiction 55:23

deposit 40:11 58:17

deposition 5:1,5 10:17 16:15
20:13 22:8 24:2,5 32:20 35:22
55:20 60:17 64:4 73:24 74:11
75:21 76:25 78:10 80:17 84:3

depositions 6:12

Depot 40:22 44:24

describe 9:23 56:1,8

description 15:2 40:24 44:25

Design 42:16

designated 71:18

difficulties 30:21 49:5 66:7

direct 25:3 26:7 27:5 72:21

directly 26:24 27:17,19 28:1,4
52:9 72:22

disagree 64:7,9

disclose 57:13

discovery 52:25

discussing 58:1

disorderly 60:6

disposition 31:20

dispute 57:9 58:14,15

disputes 67:8

district 59:8,10,21

document 10:15 11:25 13:14
15:11 16:3 17:5,11 18:3,8 20:1,
16 33:12 34:16 41:9 44:5,14
45:8,22 47:16 50:11 60:19 63:16
65:18 68:1 72:1,3

document's 22:5 74:13

documentation 46:16

documents 11:20 19:23 22:5
35:3 53:1 67:16 75:7

Docusign 12:1

dollar 37:3

dollars 25:16 26:18

draw 78:14

drawings 82:7

Drive 11:2 12:7 19:3 20:21 22:13
28:15 34:18 35:5,14 36:4 39:1,
20 40:8 46:22

drivers 54:14

drug 8:6

drugs 8:7

dug 42:24

duly 5:16 61:19

---

**E**

e-mail 18:20,25 21:18,19 23:2,3
62:4 65:24 66:1 67:10,22 68:6,
14 70:8

e-mailed 82:9

e-mails 27:23

E-S-Q-U-I-V-E-L 48:24

earlier 30:4,5 79:8

Eddy 50:18

Edmonds 50:5

educational 6:23

Edward 49:11,14

effect 27:23

elaborate  6:24 8:3,10

employee  23:13 31:24 47:14
    48:11,16,24 49:14

employees  28:2 47:20,25 54:14

employment  30:4

end  28:11

engage  71:16

engaged  47:9

engaging  76:8

engineer  56:15

enter  71:8

entered  71:3

entirety  45:22

entitled  22:5

entity  73:6 76:7

equipment  33:11 54:6,8

error  39:4

Esquivel  48:24

established  53:8

estimate  10:23 37:14 38:3,4,5
    47:8

Estimated  16:7

evade  72:13

event  49:15

exact  9:8 13:13 14:22 38:8 56:14

exam  69:4,22

EXAMINATION  6:21 81:20

examined  5:18

excavation  42:23

Excel  47:17

excuse  7:7 29:9 78:18

executed  12:5,8 75:7

execution  14:17 75:4

exhibit  10:15,17 13:14 16:6,13,
    15 17:12,16 18:4,15 20:10,13,24

22:4,8 23:17 24:2,5,7 25:7,19
26:11,21 27:11,13 31:17 32:15,
20 35:19,22 43:20,21 55:12,20
60:13,17 63:24 64:4 67:3,15,25
73:24 74:11 75:21,25 76:1,22,25
78:10,12 80:12,17 82:21

Exhibits  23:23 70:2,6

Exigent  7:20 9:4,12 10:20 12:15
    15:14 18:16 20:4 23:13 25:22
    26:17,25 28:7 29:16,17 30:3
    34:17 35:4,14 36:4 38:23 39:8
    41:10 42:3,16 51:5 52:9 53:4,15
    61:12 64:25 65:3,11 67:14
    70:12,15,18 74:21 75:1,14 76:11
    77:5,9 78:1 79:18,21 80:20 81:2,
    6

Exigent's  67:14

exigentdesignbuild  66:3

exigentdesignbuild.com  62:5
    65:25

exigentlandscaping@yahoo.
com  67:23 68:6

exigentlandscaping@yahoo.
com.  21:19 23:2

expedite  14:25

experience  9:9

expiration  62:1,3 65:23

explained  6:18

export  47:19

exported  47:19

express  54:25

---

## F

fact  11:15 63:2,3,5,6 71:12 73:18

failed  75:14 78:4

fair  5:22 55:18

false  59:22 60:5 77:20

falsely  75:6 77:14

familiar  61:4 67:18

family  82:2

Fedex  19:25

fee  20:1,2

felt  56:4

Fergeson  43:24 44:22

fifteen  82:1

figure  45:25 46:17

filed  54:2

find  81:11

finds  71:11 73:18

fine  5:23 59:13

finish  10:3 55:16

finished  10:1 70:21

fire  54:20

fired  29:4,15,18,19 30:22,25 31:7
    54:25

firm  82:17

fix  51:22

fixed  43:20

floor  43:5

foremen  47:24

form  7:23 21:3 52:16 64:6 65:14
    68:16,24 70:20,21

formal  61:4,6 63:24 65:11 68:12
    70:25 71:12 73:19

formality  12:18,23

forming  9:12

Forty-three  39:18

Fostoria  38:24 39:9

foundation  21:3 52:13,16 53:8,
    11 70:20,21

four-page  84:1

fraud  57:7 58:12,13,16 59:1
    60:11

fraudulently  76:12,15

front  17:5 22:20 38:22 65:19

---

66:17 69:5,11 72:3

**fuel** 53:23 54:6,7,8,12

**full** 51:11

**funding** 8:10

**G**

**G-R-A-N-D-C-H-A-M-P** 30:2

**G-U-I** 39:12

**gain** 9:9

**Galindo** 48:11

**game** 66:23

**Girard** 75:8 77:17

**give** 8:1 15:15 49:25 57:14,16
59:17 65:5

**giving** 53:9

**glue** 44:9,12,13

**good** 50:3 71:25

**graduate** 6:25

**Grand** 45:11

**Grandchamp** 29:25 42:16

**grotto** 22:15 47:1 55:4 56:10

**guess** 83:1

**Guest** 49:11,14

**Guillotine** 39:13,15,16

**guy** 41:17

**guys** 31:9 55:12 56:17

**H**

**half** 38:9,10 39:18 41:20,22
43:12 51:6,9 52:11 53:5 54:1

**handle** 30:17,19 59:10

**handled** 66:18

**handwriting** 17:21 18:1,3 19:10
20:23 22:20,23

**handwritten** 37:18 52:3

**Hank** 9:19 10:11,12 14:7,21
15:23 18:8,12 20:5 67:8 81:23
82:6,10

**Hank's** 14:8

**happened** 53:25 59:14 63:25

**health** 8:5

**hear** 8:19,21 17:19 18:6 21:22
48:20

**Hebeka** 58:24 75:18

**Height** 9:18

**Heitmann** 5:6,14 6:11 12:20,25
18:16 21:16 32:18 57:3 80:15
83:16

**held** 76:12,15

**helping** 82:4,5

**Henry** 75:8 77:17

**Hernandez** 50:18

**high** 6:25 7:3

**higher** 31:14

**highlighted** 13:15 45:12,16

**Hold** 57:14

**hole** 42:24 64:23

**home** 10:13 13:7 19:5 40:22
44:24 62:23,25

**homeowners** 61:8 62:7,13,22

**homeowners'** 61:21

**Honestly** 29:20 45:24 49:13

**hourly** 48:1

**house** 55:24

**hundred** 25:16 26:18 59:23

**hybrid** 13:10,11

**I**

**ID** 59:21

**idea** 49:13 56:8

**identify** 5:8 24:9 31:19 78:23

**impair** 8:5,8

**impairments** 9:2

**in-ground** 75:12 77:22

**include** 54:17

**included** 61:8,25

**incomplete** 53:9

**indirectly** 72:22

**indiscernible** 32:1 69:19

**individual** 73:5 76:7 79:19

**individuals** 79:17,21

**inferred** 77:5

**information** 48:13 61:13 67:7
73:4

**initial** 5:19

**installation** 76:9

**interfering** 69:22

**interjects** 32:3

**Interrogatories** 24:8 78:14

**interrogatory** 24:8,20 25:15
26:7,17 27:4,14 31:19 51:5
53:10 78:15,23

**interrupt** 12:18

**interrupting** 12:23

**Interruption** 67:19

**invoice** 32:23 34:5 40:23 42:15,
21 52:2

**invoices** 38:12 82:21 83:9

**involved** 28:12

**involving** 60:11

**Iron** 46:21 47:11 53:19

**issuance** 16:9

**issue** 81:2,5

**issued** 60:23 61:11 62:16 70:15
73:5

**issues** 29:6,22

**items** 43:13

**J**

**jail** 59:13

**January** 78:24

**Jeff** 5:23,25 8:12,17 12:17 13:5
14:14 16:17 17:25 21:24 34:6
44:7 45:21 49:25 55:10 56:19
57:14,24 66:11,24 69:7 74:14
79:25 82:20

**Jeffrey** 5:10

**Jesus** 48:4

**Jet's** 9:13

**job** 28:7,17,21,23 30:21,22,25
31:9,11 33:8,11,15 37:23 38:23
39:1,8 40:23 44:18,25 70:14

**jobsite** 28:5,9 83:12

**Joe** 50:5

**Joseph** 58:24 75:18

**JP** 43:13,21 51:22,24

**judge** 69:5,11

**July** 5:2,7 24:13,17

**June** 10:25 12:1 14:1,17 15:5,12
16:2 17:2,12

**K**

**kind** 29:21

**knowingly** 72:13 75:5 77:14

**Kody** 29:9 42:15

**Kody's** 29:24

**L**

**labor** 47:14

**laborers** 47:24

**lack** 71:25

**laid** 53:11

**Lancewood** 19:3

**Landscape** 9:18

**landscaping** 7:20 9:4,12,14,15
10:13,20 15:14 18:17 23:13
34:18 35:4,14 36:4 52:10 53:4,
15 70:12,16,18 78:2 80:20 81:6

**Landscaping's** 41:10

**LARA** 65:3,4

**lastly** 82:19

**latest** 31:12

**law** 76:6

**Lawn** 9:18

**laws** 72:9

**lawyers** 11:19

**lazy** 42:23

**leave** 5:20

**left** 10:20 55:23

**lesser** 47:6

**letterhead** 41:10

**level** 54:3

**license** 7:15,16 11:7,11,13,15
13:21,25 14:3,21 15:13 20:8
23:20 25:25 26:4 58:20 59:2
60:14,15,23 61:2,8,10 62:1,2
63:10,12 64:1,2,13,15,17,18,25
65:1,2,4,9,23 67:9 68:13 71:19
72:16 73:5,13 74:3,8 76:2,3 77:5
78:25 79:11,13,14 80:13,21
81:2,5 82:5

**licensed** 61:19 62:20 64:11
70:18 72:17,18 74:21 76:7,12,16
77:6,10,16 80:25

**licensee** 72:22 73:3

**licenses** 7:14

**limestone** 39:17,18 55:2,4,7
56:4,9

**Limit** 69:18

**listed** 40:5,19 41:6 42:11 43:8
65:8 76:2

**lived** 19:6,8

**Living** 79:9,15

**LLC** 7:20 15:14 18:17 62:17 75:8
78:2

**load** 39:6,7

**logged** 54:3

**logo** 10:20

**long** 7:18 72:4

**look-up** 60:14

**looked** 27:14 34:1 36:16 52:25
65:25 70:2 80:6

**loose** 29:21

**lot** 53:24

**loudly** 8:14,22

**Lutheran** 7:3

**M**

**M-E-H-R-A** 80:9

**M-I-S-A-E-L** 50:13

**Macomb** 7:8,10 59:4,9 61:18
75:6 77:15,21

**made** 24:15 25:3 26:8 33:22
39:3,4 57:10,11

**Madison** 23:10

**main** 58:22 64:12

**maintenance** 61:10 63:11 72:19

**majority** 39:6 53:23

**make** 8:23 34:11 37:8 44:14
53:17,19 69:10,15

**making** 30:17 38:13 64:20

**managed** 28:13 31:9

**manager** 28:10,12,13,17,23 29:8,
10,11 31:14,15,16 33:9

**managers** 28:21 44:17,18 54:13

**managing** 28:10 31:11

**March** 46:21 60:23

**Marino** 46:21 47:6,10 52:5 53:18

mark 11:20

marked 10:14,16 11:22 16:12,14 18:4 20:10,12 22:4,7 24:1,4 32:19 35:21 55:19 60:13,16 64:3 73:23 74:10 75:20,24 76:24 78:9 80:12,16

material 16:9

materials 33:11 40:8

math 51:13

matter 5:19

Maxwell 29:11,12,15

means 60:1

meant 77:2

meeting 50:1 72:25

Mehra 80:8

memory 8:5,8 9:2 17:6 28:22 38:10 39:5 46:3 54:15 55:8 56:15 60:19 66:22

mention 18:16,19

mentioned 16:2

mentor 10:4 82:3

Mercado 28:25

messages 27:23,24

Messina 45:9 52:2

Messina's 25:14

Michigan 38:24 39:9 58:10 72:25 73:9,11 76:6

microphone 8:15 18:6

middle 10:23

Millington 38:23 39:9

mind 53:25 54:22

mind's 46:6

Mine 37:22

mini 84:2

minor 53:19

minutes 56:18 81:11

Misael 50:13

missing 36:17 52:22

mistakes 30:17

Mm-hmm 67:15

Moe 46:7

Moe's 39:7

Mohamed 11:2,25 12:4 14:24 27:16 64:10

monetary 78:6

money 7:25 8:1 9:5,7 20:4 27:20 28:3 31:20 52:12,15 53:5,6,22

months' 59:15

moral 71:25

municipalities 58:10

## N

N-A-C-Y 37:11

N-O-E 50:23

Nacy 37:11 38:1

named 49:14

Native 47:16

necessitating 75:15 78:5

needed 19:24

Noe 50:23

nolo 59:25 60:2,5

non-confidentiality 57:12

nonreporting 59:15

North 7:3

Nos 31:23 71:1

notarized 19:23,24

notary 19:12,14,15,16,18,19

notation 52:3

November 38:20 39:22,25 42:16 43:25 47:19

number 11:15 23:5,6 34:2,3 46:6

51:10,20 61:8,10 62:1,3,5,6 63:10,12 64:13,15 65:1,23 67:9, 13,14 68:8,9,13,15 70:8 76:2,3 82:24

number's 23:8

numbers 11:18,19 32:16 46:24 71:4

## O

O-R-T-E-G-A 50:23

O-T-H-L-O-F 42:10

Oakland 7:7,9

objection 21:9 53:7 66:14

obstensible 72:17

obtain 7:9 61:16 78:25 80:21

obtained 80:14

occupation 71:17,20

occupational 61:20 71:14,15 73:21

October 23:19 41:1,12 61:25 62:18 68:1

offered 27:18

office 5:24 6:1 13:7 19:18 54:17

officer 15:23 61:13 62:11 73:6

officially 82:16

officials 75:6 77:15,21

OJ 11:2 64:11

one's 72:15

operated 79:10,12

operation 44:17

operations 28:13 29:10 31:14,16 54:13 72:22

opinion 57:9 58:14 69:17

opportunity 55:15

orchestrated 52:22

order 13:16 16:3 17:3,6,8,14 38:20 39:22 71:3,9 73:15

ordering 83:24

originally 28:22

Ortega 50:23

Othlof 42:8

Outdoor 79:9,14

overhead 53:23 54:4,5,17

owner 7:20 62:25

**P**

P-I-N-E-D-A 50:13

p.m. 55:21 56:22,23,24 57:1,19,
20,21,23 60:18 64:5 68:23 73:25
74:12 75:22 77:1 78:11 80:18
81:15,16,17,19 83:22,23 84:3

P78280 5:12

paid 20:5 26:24 27:16 38:4,5
40:13 41:16,20,22 43:6 45:19,25
46:7 47:6 51:5 52:8 74:25 77:25

paragraph 21:18 22:12,15,25
23:1,5,10 61:6 62:9,16,20 63:9
65:21 67:22 68:3,8,11 70:2 71:7
74:7,25 75:4,11,14 76:1,6,11,15
77:3,9,13,20,25

paragraphs 63:6

parents' 19:5

part 13:14 39:20 73:3

partial 39:5

parties 25:11 26:15 68:13 71:8

partner 72:14 82:16

party 5:21 65:13,24

past 79:18 81:23

pattern 63:2,3,5,7

pause 5:25

pay 20:4 27:19 38:7

paying 46:1,2

payment 24:17 25:3,4 26:11 38:6
62:21

payments 25:1,11,21 26:8,15
27:5,10,18,21 45:13 46:6 70:19

PDF 47:18

pendency 30:25

people 30:24

percent 51:6,9

performed 62:12,22

period 28:6,18 79:16

permit 14:7 16:9,22 17:16 22:12
61:16,18 62:9,16 63:15 65:12
67:4 70:7,14 77:13 78:25 79:13
82:4,7

permits 14:23 15:1,4,7,10 17:7
77:22

person 60:6 71:15,18 72:12,15,
16,20 73:6

personal 10:13 54:3

personally 23:19

Petri 12:1,10,12 13:9 51:7

Phil 13:22

Phillips 5:12,22 8:12 10:1 12:17,
22 13:3 14:13 16:17 17:24 21:3,
9,24 22:1 32:1 34:4 44:7 45:21
49:25 51:14 52:13,16,19 53:2,7
54:10,21 55:9,13,18 56:19
57:14,24 59:7 63:16,20 64:6,19
65:14,17 66:4,9,14,24 68:16,19,
24 69:6,17,23,25 70:20 74:13
76:18 78:16,19 79:3,25 80:3
81:11,21 82:20,25 83:5,6,15,18
84:1

phone 23:5,6,8 27:25 62:5 67:13
68:8,14 70:8

pick 83:10

picking 8:13 83:13

pickup 44:1

piece 55:7,9 56:2,4,6,12

Pineda 50:13

Pisarski 18:23

Pizza 9:13

place 83:11

placeholder 47:16 49:12

Plaintiff 5:11 24:7,10 27:5 31:21
75:7 77:15,25 78:7

Plaintiff's 77:23 78:13

plaintiffs 58:6

Plan 20:1

plans 22:17

play 66:23

plea 59:25 60:5

plumbing 44:13

plywood 44:10

point 29:15 31:23 64:12 80:24

pointing 56:9

pool 11:5 16:22 17:16 22:16,17
40:18 42:23 55:24 58:18,20 67:3
75:12,15 76:8 77:23 78:5,6

pools 9:10,24 43:13,21 51:22,24
75:16

poor 69:16

pop 82:20

popped 50:1

portion 32:8 36:25 38:5 75:1
78:1

possesses 71:18

pounds 56:14

practice 71:16

predated 40:2

prescription 8:6

present 15:17

pressure 30:17,18

presume 6:11 12:25

pretenses 59:22 60:5

pretty 51:21

previous 15:20 66:12 68:22

previously 82:14

price 75:1 78:1

prior 8:16 9:9 14:1,17 15:7 17:25 34:16

privilege 57:25

probation 59:13,15

problem 6:2 13:6 66:21

proceedings 58:3,5

process 6:15,18 14:8,25 77:14 82:4

Processing 20:2

produced 14:10,13

professional 7:14

progress 25:4

project 28:10,11,12,13,17,21,23 29:8,11 30:8 31:14 33:9,17 44:17,20 47:9 51:6 54:6,7,8,12 61:21 62:11,12 64:12 70:12 82:8

projects 78:23 82:16,17

proof 55:3

proper 53:11

properly 41:7 43:8 49:2 61:14,22 62:7,14,23 75:15 78:4

property 41:17 80:22

proposal 11:5

provide 73:4

provided 34:16 47:17 61:3

provision 72:6

public 58:2,4

pull 15:7

pulled 14:23 15:4,10

punishment 59:14

Purchase 38:20 39:22

purchased 44:6

purportedly 67:8

purporting 65:1

purports 18:13

put 10:14 32:10,15 41:18 44:20 64:25 78:16,19

putting 30:18 44:18

**Q**

qualified 15:23 61:13 62:11

qualifying 73:6

question 8:11,16 15:17,21 17:25 49:7 51:4 52:8,15 53:2,4,14 54:11 63:4,21 64:19 65:16 66:6, 10,13 68:18,20,23 69:1,3,7,9,10, 12,14,23 79:2 80:20

questioning 38:13 55:14

questions 23:22 58:4 66:25 69:18 81:9,10,22

quick 81:22

quit 30:7,8,9,13,16,21,25 31:4,8 69:18,19

**R**

rabbit 64:23

Ramos 49:18

read 15:20 54:22 61:14,22 62:7, 13,23 66:12 68:22

reading 66:17

real 49:11 69:15

reask 21:5

reason 30:6 83:7

Rebar 40:16

Rebecca 74:5

recall 7:19,24 9:8 13:12 14:22,23 15:9 18:14 20:6 27:24 38:8 56:14 59:17 65:25 70:3,5 74:5 80:24 81:7

receipt 41:12,16 44:24 45:13

receipts 53:24

receive 59:13

received 24:9,12,21 25:16 26:2, 3,18 31:21 53:4,6,15,16,19,21 62:21 70:19

recitation 53:10

recognize 19:12 22:11

record 5:4 6:4,5,6,8 8:17,23 32:2, 5 56:20,22,23,24 57:1,15,19,20, 21,23,24 75:25 81:13,15,16,17, 19 83:22,23

records 31:25 47:14

redirect 81:9 83:16

reduced 60:6

referred 81:23

referring 17:5 28:6 32:16 56:6

refers 47:16

reflected 24:23 25:10,19,21 34:23 35:19 37:6 45:6,16 48:21 49:2,22 50:16,20 51:1

reflecting 38:11

reflects 24:17 38:16 46:11

refresh 66:21

refusing 69:13

regard 58:9

registered 65:3

registration 71:19

regulated 71:17

related 9:19,21

relating 73:4

relationship 9:23 74:22 77:11

remaining 41:25

remember 29:14 30:9 33:2 47:14 59:1,15 66:18,19 72:4 80:11 81:1,7

Remote 5:1

remotely 5:6

removal 75:16 78:5

**removed**  47:12 52:6

**renovations**  73:10

**rent**  54:18

**rental**  32:24 33:4 83:11,13

**repairs**  73:10

**repeat**  8:16 12:11 14:19 68:21
    79:19 81:4

**rephrase**  15:16 19:15 63:21

**replaced**  29:1

**reported**  29:10

**reporter**  5:9 8:20 10:16 15:20
    16:14 20:12 22:7 24:1,4 32:3,19
    35:21 49:7 55:19 60:16 64:3
    66:10,12 68:22 73:23 74:10
    75:20 76:24 78:9 80:16

**representations**  77:21

**representative**  21:15 23:10

**represented**  75:6 77:14

**reps**  12:13

**Requests**  78:13

**required**  62:20 72:7 79:13

**requires**  76:7

**reread**  15:19

**residence**  77:23

**residential**  11:13 13:21 14:3
    15:13 20:8 23:20 26:3 58:20
    60:14 61:9,20 63:11 64:11
    72:17,18 73:1 74:2,22 76:8 77:6,
    10,16 78:24 79:10

**Resilient**  79:9,14

**resolved**  73:15

**resolving**  71:4

**respect**  58:4,5

**Respectfully**  32:7

**respective**  75:1,16

**respond**  72:6

**Respondents**  61:17 62:6,21

71:13 73:19

**response**  24:7 25:15 26:17 27:4
    31:23 51:5 52:25 53:10 79:1,2

**Responses**  78:12

**responsible**  44:18

**rest**  41:19 52:15 53:6,22

**restroom**  55:14

**result**  74:2

**review**  82:6

**Revised**  20:16 22:5 67:15,25

**revision**  22:6,15

**right-hand**  32:17

**river**  42:23

**Road**  38:24 39:9

**roll**  12:19,24

**room**  5:20 12:19,24 13:4

**rule**  72:6 73:9

**runners**  54:13

**S**

**Saad**  11:25 12:4 14:2,16 26:2
    27:16 30:21,24 33:16 40:3 54:24
    56:3 63:3,7,19,25 70:19

**Saad's**  12:25 39:7 54:22 55:24
    70:10,14 80:22

**salaries**  54:18

**salary**  13:9 47:25

**sales**  12:13 51:5

**salesperson**  61:12

**San**  46:21 47:6,10 52:5 53:18

**satisfies**  13:3

**saved**  47:18

**school**  6:25 7:2,3,12

**screen**  10:14 12:12 16:12 20:11
    31:18 32:15 60:13 74:14 75:24
    78:16,19

**scrolling**  32:23

**Section**  71:14 72:7 73:20

**Self-funded**  9:6

**sense**  69:10

**sentence**  71:7

**separately**  24:25

**September**  16:8 20:19 67:16

**Sergio**  48:24

**Set**  78:13

**sheet**  38:22 46:10

**Shelby**  19:3 59:4,9,20

**ship**  33:18 34:17 35:4,14 36:4,
    16,25 38:23 39:5 83:3,8

**shipped**  39:25 40:8

**short**  79:16

**shot**  46:2,3,4

**shotcrete**  46:2,3,4

**show**  6:1 32:12 55:3,12

**showing**  16:12 20:10 22:4 50:2
    60:20 80:12

**shows**  26:24 41:22,25 45:13
    46:24 47:4

**Shush**  69:24

**sic**  37:4

**sign**  18:8

**signature**  18:12 19:12 37:17,20
    42:3 67:8 82:11

**signatures**  47:5

**signed**  11:25 15:5 17:3,6 18:12
    57:11 61:11 67:9

**similar**  63:2,6,8,9

**simultaneous**  69:20

**sit**  8:5,8

**site**  22:12

**Sixteen**  74:19

**slash**  16:7 62:2

slide 27:6

small 10:12 37:8 60:10

smaller 44:14

sole 7:20

Soria 48:4

Sorrento's 9:13

sound 51:13

sounds 60:1 80:4

speak 8:14,22

speakers 69:20

speaking 55:9 57:25

specific 33:7

specifically 47:25

speculation 54:21

spell 30:1 39:12 42:9

split 39:7 51:18

spoke 24:18 60:9

spoken 14:16

spots 62:1

spreadsheet 47:17

standards 72:25

start 7:25 8:1 9:5,7 16:7 28:7
71:13

started 9:4 17:7 79:9

starting 9:9

state 24:20 25:3 58:10 72:9,10

stated 61:19 62:9 77:4

statement 51:7 64:20 69:1

states 26:7 61:6 71:7

stay 29:15

stayed 29:17

stealing 29:2

stipulated 71:8 72:2,5

stipulation 71:3 73:15

stone 26:8 27:16 38:18 39:4
43:1,4

stop 69:22

street 8:7

stretch 66:22,23

strike 22:11

structural 46:24,25

stuff 10:13 52:23 54:18 60:10
82:5

subcontractor 25:4

subdivision 72:10

subject 58:1 81:9

submitted 22:16 61:18 82:7

substantial 74:25 78:1,6

substantiate 46:17

sued 74:5 75:18 79:17,21

suffered 78:7

summary 27:13 33:22 34:12,23
35:20 36:9,22 37:6 38:1,11,14,
16 40:5,19 41:6 42:11 43:8
44:21 45:5 46:10 47:10 48:9,13,
22 49:2,22 50:16,21 51:1,17,21
53:16

summed 48:6

supplier 27:6

suppliers 27:19 53:25

supposed 14:20

Susannah 8:18 15:19 83:19

suspended 7:16,18 60:25 74:3

swear 5:9

swimming 11:5 16:22 17:16 67:3
75:12,15 76:8 77:23 78:5

sworn 5:16 6:10

---

**T**

---

T-E-L-L-O 48:16

table 24:25 25:7,10,19,21 26:14,
22,24 27:11

talk 18:6 56:1 57:16

talking 17:8 63:18 68:11

team 54:3

Teams 50:1

technical 30:21 49:5 66:7

technically 82:1

telling 46:6

Tello 48:16,21

ten 81:11,25

term 56:2

terminated 28:8 29:13 30:4,5
31:12 81:1

terms 13:4

testified 5:18 14:16 79:8

testify 5:16

testimony 83:22

text 14:10,20 27:23,24

texted 14:6

thing 41:18 63:25 64:18

things 58:1

thinking 52:20

third-party 70:6

Thirty-one 10:8

Thomas 48:11

thought 17:6

thousand 25:16 26:18 59:23

tie 44:15

time 5:7 9:17 11:7 13:25 18:25
19:8 21:20 28:6,18 31:25 33:10
47:14,18 59:13 72:4 79:16,20
83:17,18,20

timely 75:14

times 28:14,16 31:11

title 71:17

titled 20:16

today 5:6 8:5,8 13:1

today's 83:21

toggle 23:23

told 14:6 15:1

tons 39:18

top 10:20,23 35:13 47:18

total 26:24 28:14 35:17 44:3
45:11,17,24 46:25 47:1,4,6
50:14 51:11 53:16

town 81:6

Township 19:4 59:4,21 75:6
77:15,21

trade 7:12

trailer 33:4 82:22 83:10

transcript 83:25

transporting 33:11

truck 46:1

true 71:12 73:19

truth 5:16,17

Tuesday 5:2 47:19

Tyler 5:12 12:21 14:12 59:6

type 13:10 43:1

typo 77:2

**U**

UCG 39:11

uncle 81:23,25

uncomfortable 56:5

understand 6:14 53:14 63:20
65:17 66:5 68:25 69:7,9,13,14

understands 69:8,12

undisclosed 72:20

University 7:9

unlicensed 61:12 72:12,15,16

unlike 34:16

unwilling 55:2

Upper 38:18

utilities 54:18

**V**

vague 56:3

vast 53:23

video 83:23

video-recorded 5:5

viewed 15:22 81:25

violated 71:13,24 72:5 73:20

violation 72:9

vision 30:20

visit 12:7

visited 28:14

**W**

waiting 27:19

waiving 57:25

wanted 34:11 57:18

water 27:6

weather 16:8

website 60:14

weighed 56:13

West 38:23 39:8

whited 33:19 36:17

wife 6:18 79:8

wife's 18:23 19:10

willful 72:8

winter 30:10,11

witness's 8:21

word 39:11

work 9:12 10:9,10 13:9 17:7 30:3

41:17 79:15 82:18 83:5

worked 9:13,25 10:12 12:14,15

worker 48:4

workers 48:1

working 9:24 14:6,9 15:3 19:18
80:22 82:15,17

workmanship 29:6,22 72:25

writing 23:16

wrong 38:13

**Y**

year 30:11 54:1 59:17

years 14:8 54:1 66:20 79:18,22
82:1

yesterday 61:3

**Z**

zoom 5:6 44:7 45:21

HANSON RENAISSANCE
COURT REPORTERS & VIDEO
hansonreporting.com
313.567.8100