UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:
BRANDON HEITMANN            Chapter 7
           Case No. 24−41956−mar
           Hon. Mark Randon

       Debtor(s)
_____/

MOHAMED SAAD,

      Plaintiff,

v

BRANDON HEITMANN            Adv. Pro. No. 24-04375-mar

      Defendant.
_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**NOW COMES,** Debtor / Defendant, Brandon Heitmann ("Defendant" or "Heitmann"), by and through his Attorney Tyler P. Phillips, of the law firm Apex Law, who hereby states as follows for his Response to Plaintiff's Motion for Summary Judgment:

     A.     Plaintiff's Claims Based on Alleged Fraud and Construction Defects Fail.

        i.    *Heitmann's licensure during the course of the project, is fatal to Plaintiff's claims*.

Plaintiff's claims of false representation, false pretenses and actual fraud and seeking damages for alleged repairs for construction defects are grounded in Plaintiff's assertions that Heitmann misrepresented his licensure status on the contract by placing a fraudulent license

number upon the same. The fundamental problem with Plaintiff's claims is that Heitmann became licensed during the course of construction. Therefore, the alleged fraudulent fact that forms the basis of Plaintiff's complaint (and motion)—that Heitmann failed to maintain a license, is no longer false.

It is undisputed that Heitmann obtained his license during the course of the contract with Plaintiff. As discussed in Defendant's Motion for Summary Judgment [Dkt. 88], any ills resulting from a lack of licensure were cured when Heitmann obtained his license prior to the work being complete. As stated by the Michigan Court of Appeals:

> The clear and unambiguous language of the statute imposes no requirement that a residential builder be licensed at the time the contract is signed in order to bring or maintain an action in a court of this state for the collection of compensation for the performance of the contract and, therefore, one may not legitimately append this requirement to the statute. In other words, because the statute does not require a residential builder to allege and prove that the builder was licensed at the time the contract was signed, neither may the courts.

*Edgewood Dev*, Inc *v Landskroener*, 262 Mich App 162, 167; 684 NW2d 387 (2004). It follows that, if the Michigan legislature saw fit to allow a residential builder to bring a claim on a contract so long as it became licensed during the course of the project, failure to have the license at the outset of the contract is not tantamount to fraud. Further, from a practical standpoint, with Heitmann's subsequent licensure the Plaintiff ultimately received the benefit of his bargain: his work was, in fact, overseen by a licensed individual during the course of construction. Therefore, because Heitmann obtained his licensing during the course of the work, Plaintiff's claims relating to false representation, false pretenses and actual fraud fail.

    ii. *There are several disputed or mitigating facts, which prevent dispositive relief in Plaintiff's favor*

Even setting aside the foregoing, there are several key disputed or mitigating facts which would prevent summary disposition on Plaintiff's fraud claims: First, Plaintiff never verified Heitmann's license number via the State of Michigan's website. Second, Plaintiff was informed by Heitmann that a different individual was responsible for obtaining construction permits—someone other than Heitmann. Moreover, at the time Plaintiff learned this information, no work was actively being performed on the Project (see **Exhibit 6k** of Defendant's Motion for Summary Judgment [Dkt. 88]). All of these facts speak to the reasonableness of plaintiff's reliance and on the failure of Plaintiff to mitigate his damages as he allowed Exigent to continue to perform work for over 8 months even after he had learned someone else's name was on the permits, a fact which he learned before a shovel was turned. Therefore, Plaintiff's motion must be denied.

      iii. *Plaintiff has failed to show a causal nexus with his damages and the purportedly fraudulent fact.*

As discussed extensively in Defendant's Motion for Summary Judgment, Plaintiff has failed to provide any evidence establishing the veracity of the damages claimed and has failed to provide any causal connection between Heightman's licensing status, and Plaintiff's damages.

The only evidence provided by Plaintiff to support his damages is an email from Justin Booth, a salesperson of the replacement pool contractor. This email outlines all of Plaintiff's claims of defective construction and was relied upon by plaintiff in formulating his calculation of damages. (**Exhibit 6l** of Defendant's Motion for Summary Judgment [Dkt. 88], *Booth Email*) However, this email, and Mr. Booth's testimony are unreliable and inadmissible because Mr. Booth is not an expert (Plaintiff has been barred from naming experts, *See* Dkt. 77). Further, Mr. Booth cannot be a fact-hybrid expert because he has no residential builder's license and no expertise in structural, mechanical, or electrical engineering (**Exhibit 6m** of Defendant's Motion for Summary Judgment [Dkt. 88], *Booth Transcript* at pp. 15-22) and because Mr. Booth is not relying on his

own observations for this email, but the observations of another (**Exhibit 6m** of Defendant's Motion for Summary Judgment [Dkt. 88], *Booth Transcript* at pp. 43-44). Thus, for the reasons set forth in Defendant's Motion for Summary Judgment, Mr. Booth lacks the qualification or factual basis to form his opinions.

Even disregarding Mr. Booth's lack of qualifications and factual basis for his opinions, Plaintiff has completely failed to provide any other evidence of his claims. By way of example: (1) Plaintiff claims the grotto roof is cracked, but has not provided a picture of the crack[1]; (2) Plaintiff has not provided as-built measurements; (3) Plaintiff alleges the grotto has shifted / settled, but has not provided any photographs showing the settlement; (4) Plaintiff has not provided the actual contract for the work to be performed by the replacement contractor (Mr. Booth testified the only contract provided by Plaintiff was not the final contract (**Exhibit 6m** of Defendant's Motion for Summary Judgment at pp.80-81 [Dkt. 88]).[2] Simply put, Plaintiff has not provided anything that he can show a trier of fact at trial to substantiate his claims for damages. Accordingly, because Plaintiff has failed to meet his burden, his claims for false representation, false pretenses and actual fraud fail.

B. <u>Plaintiff's Claim Based on an Alleged Violation of the Michigan Building Contract Fund Act Fails</u>.

Plaintiff's claim based on an alleged violation of the Michigan Building Contract Fund Act ("MBCFA") fails because Plaintiff cannot establish all the elements for such a claim. Specifically, in *Livonia Bldg Materials Co v Harrison Constr Co*, 276 Mich App 514, 519; 742 NW2d 140 (2007), the Court set forth the five elements to establish a claim under the MBCFA as follows:

---

[1] Ironically, Plaintiff utilized a photograph never provided in discovery in his motion to show the completed state of the pool. Plaintiff cannot use this photograph in support of his motion because it was never produced during discovery and should therefore be inadmissible.

[2] Plaintiff provided the proper contract after Plaintiff's deposition. This should be inadmissible because its late production robbed, Defendant the opportunity to question Plaintiff and his expert about this critical document.

> "To establish a claim under the MBTFA, a plaintiff must show: (1) that the defendant is a contractor or subcontractor engaged in the building construction industry, (2) that the defendant was paid for labor or materials provided on a construction project, (3) that the defendant retained or used those funds, or any part of those funds, (4) that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen, and (5) that the laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project…" *Id.*

In this case, Plaintiff's claim fails because he cannot establish: (1) that the subcontractors or suppliers in question were "engaged" at the time money was paid to Exigent Landscaping, LLC ("Exigent"); and (2) even assuming there was a breach of trust (there wasn't), Plaintiff cannot establish the "resulting loss" required by 11 USC §523(a)(4).

As discussed in Defendant's Motion for Summary Judgment [Dkt. 88], the unrefuted evidence clearly demonstrates that the payments made to the subcontractors—specifically, to Messina Concrete and Dolphin Water Slides—were directly made by the Plaintiff on the same day they were engaged to perform services, and not prior to. Therefore, as Plaintiff has failed to establish that the subcontractors were engaged by Heitmann prior to the payments becoming due, Plaintiff has not satisfied one of the key elements under the MBCFA. Consequently, Plaintiff cannot establish that Heitman violated the trust established under the MBCFA.

Moreover, even assuming, arguendo, that Plaintiff's interpretation of the MBCFA prevails, Plaintiff has failed to demonstrate any resulting loss under the MBCFA and therefore failed to establish a claim under 11 USC §523(a)(4). Contrary to Plaintiff's assertions, Plaintiff's damages are not "all funds" paid to Exigent, rather it would be funds which were paid twice for the same work. Indeed, the MBCFA does not require contractors to account for every penny spent years after project completion; rather, it establishes a prioritized disbursement scheme designed to

protect material suppliers and owners from duplicative payments. Here, Plaintiff cannot establish that the funds previously paid to Exigent were intended to cover the same work twice.

Finally, Plaintiff's motion improperly relies upon MCL 570.153. Plaintiff's motion implies that this section of the MBCFA is the sole element required for a claim to be established. This is not correct. MCL 570.153 merely indicates how the "fraudulent intent" required by the MBCFA can be established. Put another way, MCL 570.153 does not set forth the entirety of the requirements for a claim under the MBCFA but simply establishes *one of the elements* of a claim. In this case, it is the fourth element of an MBCFA claim as laid out in *Livonia Bldg. Materials Co., supra*. ("that the funds were retained for any purpose other than to first pay laborers, subcontractors, and materialmen").

In sum, because Plaintiff cannot establish that Messina and Dolphin were "engaged" by Exigent prior to payment and cannot prove a duplication of payments under the MBCFA, Plaintiff's claim for an alleged violation of the MBCFA fails.

C.  Plaintiff's Claim For Statutory Conversion Fails.

Plaintiff's count for statutory conversion arises solely out of Heitmann's alleged misappropriation of trust funds. Because Plaintiff's claim for violation of the MBCFA fails, its statutory conversion claim fails as well.

**CONCLUSION**

**WHEREFORE**, Brandon Heitmann respectfully requests this Court enter an order denying Plaintiff's Motion for Summary Judgment and granting Defendant such further relief as this Court deems just.

Dated: 8/25/2025

/s/
Tyler P. Phillips (P78280)
Apex Law
Attorneys for Debtor/Defendant