UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:
BRANDON HEITMANN

Chapter 7
Case No. 24–41956–mar
Hon. Mark Randon

                    Debtor(s)

_____/

MOHAMED SAAD,

        Plaintiff,

v

BRANDON HEITMANN                    Adv. Pro. No. 24-04375-mar

        Defendant.

_____/


**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT**


**NOW COMES,** Debtor / Defendant, Brandon Heitmann, by and through his Attorney

Tyler P. Phillips, of the law firm Apex Law, who hereby states as follows in reply to Plaintiff's

Response to Defendant's Motion for Summary Judgment:

        A.    Defendant's Motion For Summary Judgment On Plaintiff's Fraud Claims Is About
              His Inability to Prove Damages, Not Defendant's Character.

        Out of the twenty-five pages of Plaintiff's Response, Plaintiff spends approximately sixteen

pages assassinating Defendant's character and crying "fraud" as a result of Defendant's lack of

licensure. Defendant's Motion, however, is concerned with *Plaintiff's* failures in this proceeding –

that is, Plaintiff has failed to establish the requisite causal nexus between the lack of licensure and the alleged construction defects, Plaintiff has not provided any documentary evidence of the alleged defective conditions, Plaintiff has no credible expert testimony, and he has failed to support the individual alleged defects with any competent evidence, all of which matters Plaintiff conveniently ignores in his Response.

Even assuming (without conceding) that Defendant committed fraud upon Plaintiff, *he must still prove the amount of his damages that were directly and proximately caused by Defendant's acts*. Moreover, any damages analysis must also account for the facts that Plaintiff was extremely delinquent in his payment obligations to Plaintiff and that Defendant did provide substantial value to Plaintiff prior to the contract being terminated. Plaintiff, however, does not simply get a free pool (plus hundreds of thousands of dollars on top) without providing credible and competent evidence.

    B.    <u>Plaintiff's Claim For Violation of the Michigan Builders Trust Fund Act ("MBTFA") Fails Because There Were No Unpaid Subcontractors And Therefore No Damages</u>.

Plaintiff relies heavily on *Livonia Building Materials* and *Patel* for its argument that Defendant violated the MBTFA, but those cases not on point with the facts of the instant case. Both of those cases were brought by downstream subcontractors who provided labor or materials to the contractor where the contractor had failed to pay for such labor or materials. In such situations, the MBTFA says the contractor holds the funds in trust for the benefit of those unpaid subcontractors and in such cases damages are clearly established by the fact that the funds had been paid for the benefit of subcontractors *who had been engaged to perform services by the defendant*.

In this case, however, there were no unpaid subcontractors (and therefore no damages) because:(1) Plaintiff was delinquent on payment and (2) the subcontractors were never actually

engaged by Heitmann when payment was due. To wit, the unrefuted evidence clearly demonstrates that the payments made to the subcontractors—specifically, to Messina Concrete and Dolphin Water Slides—were directly made by the Plaintiff on the same day they were engaged to perform services, and not prior to. Moreover, at the time Plaintiff terminated the contract with Exigent, there were sufficient future installment payments for Exigent to have completed the pool.

Simply put, in order for Defendant to have been holding funds in trust under the MBTFA, there must necessarily have been a beneficiary entitled to such funds – that is, unpaid downstream subcontractors – and there were no such parties in this case. In other words, the MBTFA does not require a contractor to withhold payment to himself until the project's completion out of concern about withholding funds from a yet-to-be-retained subcontractor. Instead, it merely specifies the sequence in which funds should be disbursed once payment is received. This additional element, that downstream subcontractors and suppliers have been engaged, has been confirmed by Michigan courts. See *Livonia Building Materials Co v Harrison Construction Co*, 276 Mich App 514, 519; 742 NW2d 140 (2007) (setting forth the five elements of a claim under the MBTFA, including that "laborers, subcontractors and materialmen were engaged by the defendant to perform labor or furnish material for the specific construction project").

Contrary to Plaintiff's arguments, Defendant's position does not put the "fox in charge of the henhouse." Rather, Defendant's position is consistent with the interpretation of the MBTFA as applied by the Court in *Livonia Building Materials* and aligns with the fundamental principles governing the Michigan building industry. Contractors cannot be expected to delay payments for their own overhead or profit until project completion, especially in projects extending over two or three years. Such an approach would effectively render the contractor as a de facto bank, which is inconsistent with standard construction practices. Typically, contractors receive progress payments

from owners, enabling them to pay subcontractors, suppliers, and their own overhead incrementally, thereby maintaining functional cash flow within the industry.[1] Interpreting the MBTFA in Plaintiff's favor would be catastrophic to the construction industry and impose an impractical cash flow crisis on contractors —an outcome clearly contrary to the drafters' intent.

Finally, even assuming, arguendo, that Plaintiff's interpretation of the MBTFA prevails, Plaintiff has failed to demonstrate any resulting loss under the MBTFA and therefore failed to establish a claim under 11 USC §523(a)(4). Contrary to Plaintiff's assertions, Plaintiff's damages are not "all funds" paid to Exigent, rather it would be funds which were paid twice for the same work. Indeed, the MBTFA does not require contractors to account for every penny spent years after project completion; rather, it establishes a prioritized disbursement scheme designed to protect material suppliers and owners from duplicative payments. Here, Plaintiff cannot establish that the funds previously paid to Exigent were intended to cover the same work twice.

For the foregoing reasons and those set forth in his motion to compel arbitration, Defendant respectfully requests this Court enter an order (i) granting his Motion for Summary Judgment; (ii) dismissing Plaintiff's First Amended Complaint; and (iii) granting such other relief as this Court deems just.

Respectfully submitted,
**APEX LAW**

Dated: September 5, 2025

/s/ Tyler P. Phillips
Tyler P. Phillips (P78280)
Apex Law
Attorneys for Debtor /Defendant

---

[1] By way of example, a standard "Sworn Statement" utilized by contractors includes a schedule of value for the "contractors fee", so the contractor can pay themselves a portion of their fee as the work progresses. (**See Exhibit A, attached**)