UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

BRANDON HEITMANN,

    Debtor.
_____/

MOHAMED SAAD,

    Plaintiff,

v.

BRANDON HEITMANN,

    Defendant.
_____/

Chapter 7
Case No. 24-41956-MAR
Hon. Mark A. Randon

Adv. Pro. No. 24-04375-MAR
Hon. Mark A. Randon

**PLAINTIFF'S REPLY IN SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Mohamed Saad ("Plaintiff"), by and through his counsel, OSIPOV BIGELMAN, P.C., hereby states as follows as his Reply in Support of Plaintiff's Motion for Summary Judgment:

In his Response (ECF No. 100) to Plaintiff's Motion for Summary Judgment, Defendant seeks to distract the Court from his fraudulent conduct and reframe this case into something it is not. This is not merely a contract dispute or a construction defect case. This is a fraud case. Defendant's willful, malicious lies induced Plaintiff to pay him hundreds of thousands of dollars, and Plaintiff suffered direct damages as a result.

**I. Defendant's Reliance on *Edgewood Dev., Inc v. Landskroener* is Misplaced**

Defendant leans heavily on *Edgewood Dev., Inc. v. Landskroener*, 262 Mich. App. 162, 167; 684 NW2d 387 (2004), claiming it excuses his conduct. He is wrong.

The holding in *Edgewood* is narrow: in contrast to the present case, the *Edgewood* contractor, although unlicensed when he signed the contract, became licensed before construction

began, lawfully obtained permits, and completed the project to the local building department's satisfaction:

| | |
|---|---|
| Contractor Passed Residential Builder's exam | November 2000 |
| Filed Paperwork to Obtain License | February 28, 2001 |
| Entered into Contract | March 16, 2001 |
| Received Builder's License | May 23, 2001 |
| ***Lawfully obtained Building Permit*** | June 15, 2001 |
| Construction Completed and Certificate of Occupancy Issued | December 20, 2001 |

The Michigan Court of Appeals held that *the technical timing issue* should not bar the contractor from seeking compensation.

The present case could not be more different. Here, Defendant:

- **Inserted a fake license number** on every page of the Contract and on Change Order #1;

- **Forged (or caused to be forged) signatures** to procure permits under another person's license, without permission;

- **Lied in writing** to Plaintiff about his relationship with Hank Bell, falsely claiming that Bell was Defendant's uncle and that Bell had reviewed and approved the project plans;[1] and

- **Never obtained a license** before taking Plaintiff's money, much less before beginning work.[2]

---

[1] See **Exhibit A**.
[2] In additional to state-level licensure requirements, the City of Dearborn also requires residential builders to have a license to operate within the city limits (*see* Dearborn, MI Municipal Code § 5-241, *et. seq.*). Heitmann has never held such a license. As Heitmann lacked the appropriate licenses, he had no ability to legally obtain a building permit. To get around these requirements, Heitmann used a third-party's, Henry (Hank) Bell of Construction Contractors,

*Edgewood* was a case about technical non-compliance with the licensing statute. This is a case about **active fraud**. Defendant's reliance on *Edgewood* is a transparent attempt to distract the Court from his repeated, deliberate misrepresentations.

## II. Plaintiff Reasonably Relied on the Fraudulent Misrepresentations

Defendant suggests that he should not be liable for his fraud because Plaintiff should have independently verified Defendant's licensure. This argument is untenable, contrary to 11 U.S.C. § 523(a)(2), and must fail.

First, Michigan law requires contractors to include their residential builder's license information in their contracts. M.C.L. § 339.2404a. The bottom of every page of the Contract contains what is purported to be a residential builder's license number, "License #: 802082183." Defendant prepared the contract, signed it, and reinforced his lie in Change Order #1, which contained the same fake license number. Plaintiff's reliance on Defendant's written representation that his license number was "802082183" was justified (*see Field v. Mans*, 516 U.S. 59 (1995), indicating a (lesser) "justifiable" rather than "reasonable" reliance standard when the defendant's fraudulent misrepresentation is made in writing). *See also*, *Vaks v. Grenier (In re Grenier)*, Nos. 06-14825, 07-1131, 2009 Bankr. LEXIS 655, at *28-29 (Bankr. D. Mass. Mar. 19, 2009).[3]

Second, on September 7, 2022, when Plaintiff could not locate the applicable permits, he sent a text message to ask Defendant about them directly.[4] In response, Defendant doubled down

---

builder's license, without permission, to obtain building permits, using Bell's license to operate in Dearborn. Heitmann never obtained a license to operate in the City of Dearborn in his own name or in his company name.

[3] "With respect to construction contracts, in particular, when a contractor positively misstates that he has the requisite license to perform home repairs, the false statement is a misrepresentation as a contractor has a duty to disclose his lack of a license during negotiations. *See Pruett v. Moon (In re Moon),* No. 94-4086, 1997 Bankr. LEXIS 2346, 1997 WL 34625685 (Bankr. E.D. Va. Dec. 17, 1997). Many courts have excepted debts from discharge in cases where the debtor, a contractor, has misrepresented the status of his professional license where the creditors sustained actual injury because of the misrepresentation." *Id.* at *28-29.
[4] See Exhibit A.

on his fraud, texting Plaintiff that Hank Bell – falsely described as his uncle[5] – was "helping with the process" and had "looked at the plans and everything looks good!"[6] These misrepresentations were specifically and deliberately designed to prevent Plaintiff from discovering the truth about Defendant's deceptions.

Where a party affirmatively lies and then actively conceals the truth, reliance is not only reasonable, it is expected. Defendant cannot now claim that Plaintiff should have uncovered what Defendant deliberately hid.

## III. Damages

Contrary to Defendant's unfounded assertions, Plaintiff's damages are not speculative - they are documented with depositions and records. Moreover, all damages suffered by Plaintiff directly flow from, and are attributable to, Defendant's fraud. They can be measured in at least two ways: (1) cost of completion, or (2) voidability of contract for fraud. Plaintiff's damages are clear and calculable under either method.

*Cost of Completion*

As set forth in Plaintiff's Motion for Summary Judgment, in addition to the $350,000.00 paid to Defendant[7] and the $37,786.56 paid directly to subcontractors, Plaintiff had to pay an additional $380,073.58 to repair Defendant's mistakes and finish the job. Accordingly, Plaintiff paid $767,860.14 to complete a job that Exigent had contracted to complete for $554,454.00 – resulting in excess costs of $461,136.11.[8]

*Voidability of Contract for Fraud*

---

[5] Hank Bell testified that he is not related to Defendant (Bell Deposition at 9:3-8, 14-17), which Defendant has subsequently conceded (Heitmann Deposition at 9:19-22).
[6] Hank Bell has testified that he had no involvement with the project. Bell Deposition at 12:5-14 and 38:2-6.
[7] The Defendant can only account for $102,270.03 of those funds, leaving $247,729.97 unaccounted for.
[8] *See Fairview Builders, Inc. v. Bireta*, 2007 Mich. App. LEXIS 1280 at *3 (Mich. App. May 15, 2007), adopting the same standard to calculate appropriate damages. ($247,729.97 (unaccounted for funds) +$213,406.14 (additional costs to complete) = $461,136.11.

A contract induced by fraud is voidable in its entirety, as is any attempt by the wrongdoer to use the contract to exculpate himself from the consequences of his actions. "Fraud in the inducement to enter a contract renders the contract voidable at the option of the defrauded party." *Samuel D. Begola Servs. v. Wild Bros.*, 210 Mich. App. 636, 640, 534 N.W.2d 217, 219 (1995). "A voidable contract can be avoided (cancelled) by one party because a right of rescission exists as a result of some defect or illegality (*e.g.*, fraud or incompetence)." *Hauer v. May Builders, Inc.*, No. 367516, 2024 Mich. App. LEXIS 10358, at *9 (Ct. App. Dec. 23, 2024) (internal quotations and citations omitted). *See also, UAW-GM Human Res. Ctr. v. KSL Rec. Corp.*, 228 Mich. App. 486, 503 (1998). "Rescission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Bazzi v. Sentinel Ins. Co.*, 502 Mich. 390, 409, 919 N.W.2d 20, 29 (2018).

Unfortunately for Plaintiff, he did not discover Defendant's fraud until well after he had paid him $350,000.00 and Defendant had left Defendant's home in a dangerous condition. Plaintiff has exercised his right, after being fraudulently induced to enter the contract, to void and rescind it. As rescission "abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made," Plaintiff is entitled to a non-dischargeable judgment against Heitmann in the amount of the $350,000.00 he paid to Defendant.

**IV. <u>Defendant Mischaracterizes Plaintiff's Section 523(a)(4) Claim</u>**

Defendant claims that he did not breach the Michigan's Building Contract Fund Act (MBCFA), alleging that Messina and Dolphin were not "engaged" by Defendant prior to Plaintiff's direct payments.

First, Defendant's argument is contrary to established 6th Circuit precedent that general contractors have a duty to pay subcontractors before paying themselves (*Patel v. Shamrock Floorcovering Servcs.*, 565 F.3d 963 (6th Cir. 2009).

Moreover, Defendant again mischaracterizes Plaintiff's claim as a mere contract dispute or MBCFA claim. Section 523(a)(4) excepts from discharge debts arising from "fraud or defalcation *while acting in a fiduciary capacity*, embezzlement, or larceny." Undisputably, Defendant, as a contractor, was a fiduciary under Michigan's Building Contract Fund Act (MBCFA). That Defendant, while acting as a fiduciary, committed fraud, cannot be reasonably disputed. In a fiduciary capacity, he:

- **Embezzled** at least $247,729.97 (the unaccounted-for funds);[9] and

- **Committed fraud** by misrepresenting his licensure and authority to obtain permits.

This is squarely within § 523(a)(4).

## V. <u>Statutory Conversion</u>

Conversion occurs at the point when a party exerts wrongful dominion over another's money contrary to the purpose for which it was entrusted. *Thoma v. Tracy Motor Sales, Inc.*, 360 Mich. 434; 104 N.W.2d 360 (1960); *Trail Clinic, PC v. Bloch*, 114 Mich App 700; 319 N.W.2d 638 (1982). In order to support an action for conversion of money, the defendant "must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship and must have had an obligation to return the specific money entrusted to his care." *Lawsuit Fin., LLC v. Curry*, 261 Mich. App. 579, 591 (2004). Michigan law also allows treble damages for "stealing" and "embezzlement," in addition to conversion. *See* M.C.L. § 600.2919a.

---

[9] See Plaintiff's Brief in Support of Motion for Summary Judgement (ECF No. 89, pages 14-15) and Heitmann Deposition at 31:17-52:7 and 53:15-54:3).

Here, Plaintiff entrusted Defendant with $350,000 for the specific purpose of paying subcontractors and completing construction. Defendant cannot account for at least $247,729.97 of those funds, and the work was improper and incomplete, requiring the Plaintiff to directly pay contractors and a third-party to complete the work. This is classic conversion and embezzlement. As such, the treble damages amount to $743,189.91, which are non-dischargeable for the reasons set forth herein.

## VI. Conclusion

Defendant wants this Court to treat his lies as mere technicalities and to reframe his fraud as a contract dispute. That effort should be rejected. This case is about intentional deceit and misallocation of funds, not merely construction defects. Plaintiff is entitled to judgment on all counts as a matter of law.

Dated: September 19, 2025
Respectfully Submitted,

**OSIPOV BIGELMAN, P.C.**

/s/      Jeffrey H. Bigelman
JEFFREY H. BIGELMAN (P61755)
ANTHONY J. MILLER (P71505)
Attorneys for Plaintiff
20700 Civic Center Drive, Ste. 420
Southfield, MI 48076
 (248) 663-1800
jhb@osbig.com / am@osbig.com

# Exhibit A



**Mohammad**

> My uncle
>
> Hank bell
> Construction contractors

> Sorry

That's ok lol

> He is going to be helping with the permit process has been building for 40 years.
>
> He looked at the plans everything looks good!

**Sep 8, 2022 at 11:53 AM**

> Got an update
>
> 224379 that's the permit number It's in plan review



Perfect thank you working on it

**Sep 15, 2022 at 9:54 AM**

> Give me a shout when ya can